UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| REBECCA YATES, individually and<br>on behalf of all others similarly situated,<br><br>　　　　　　　　　　　*Plaintiff,*<br><br>　－ against －<br><br>CALIFORNIA NATURAL LIVING, INC.,<br><br><br>　　　　　　　　　　　*Defendant.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**CASE NO.:  1:18-cv-01415-GLS-TWD**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS COMPLAINT**

GREENBERG TRAURIG, LLP
William A. Hurst
54 State Street, 6th Floor
Albany, New York 12207

DIESCH FORREST, A.P.C.
Stephen E. Paffrath
(motion for pro hac vice
　　admission forthcoming)
2207 Plaza Drive, Suite 300
Rocklin, California 95765

*Counsel for Defendant*
*California Natural Living, Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION ............................................................................................... 1

I.      BACKGROUND ..................................................................................... 4

II.     LEGAL ARGUMENT ............................................................................ 5

     A.     Motion to Dismiss Standard ........................................................... 5

     B.     Plaintiff's Allegations Amount to a Barred Lack of Substantiation Claim. .......... 6

     C.     Plaintiff's Claims Regarding the Labeling of a Pesticide are Preempted Under FIFRA. ....................................................................... 7

     D.     Plaintiff's MMWA Claim Fails. ...................................................... 10

          (1)    The MMWA Does Not Apply to Pesticide Labeling Because Such Labeling Is "Otherwise Governed by Federal Law" .............................. 10

          (2)    Plaintiff Fails to State a Claim Under the MMWA ................................ 11

     E.     Plaintiff Cannot Bring Claims for Breach of Express Warranty Because the Challenged Statements are True ............................... 13

     F.     Plaintiff's Fraud Claim Must be Dismissed for Lack of Specificity. ................. 14

     G.     Plaintiff's Allegations Are Improperly Vague and Ambiguous ........................ 16

     H.     Plaintiff's Unjust Enrichment Claim Fails Because It Is Duplicative of Plaintiff's Other Claims ................................................. 17

     I.     Plaintiff Lacks Article III Standing to Seek Injunctive Relief ........................... 18

     J.     This Court Lacks Personal Jurisdiction with Respect to Claims Asserted on Behalf of Putative Nationwide Class Members Located Outside New York for Purchases Outside New York. .......................... 20

CONCLUSION ................................................................................................ 23

i

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Albert v. Blue Diamond Growers*,
  151 F. Supp. 3d 412 (S.D.N.Y. 2015)..................................................................20

*Anderson v. Logitech, Inc.*,
  No. 17-C-6104, 2018 WL 1184729 (N.D. Ill. Mar. 7, 2018) ................................22

*In re Avon Anti-Aging Skincare Creams & Prod. Mktg. & Sales Practices Litig.*,
  No. 13-150, 2015 WL 5730022 (S.D.N.Y. Sept. 30, 2015) ..................................19

*Bates v. Gen. Nutrition Ctrs., Inc.*,
  897 F. Supp. 2d 1000 (C.D. Cal. 2012) ................................................................10

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)...........................................................................................5, 14

*Bioganic Safety Brands v. Ament*,
  174 F. Supp. 2d 1168 (D. Col. 2001)................................................................8, 10

*Bowling v. Johnson & Johnson*,
  65 F. Supp. 3d 371 (S.D.N.Y. 2014)....................................................................12

*Braun v. Giarratano*,
  2002 WL 1916368 (N.D.N.Y. Jul. 30, 2002) ........................................................15

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*,
  137 S. Ct. 1773 (2017)...................................................................4, 20, 21, 22

*Brown v. Lockheed Martin Corp.*,
  814 F.3d 619 (2d Cir. 2016).................................................................................21

*Casso's Wellness Store & Gym, L.L.C. v. Spectrum Lab. Prods., Inc.*,
  No. 17-2161, 2018 WL 1377608 (E.D. La. Mar. 19, 2018) ..................................22

*Chang v. Fage USA Dairy Indus., Inc.*,
  No. 14-3826, 2016 WL 5415678 (E.D.N.Y. Sept. 28, 2016) ..........................19, 20

*Chavez v. Church & Dwight Co.*,
  No. 17 C 1948, 2018 WL 2238191 (N.D. Ill. May 16, 2018) ................................22

*In re Chinese-Manufactured Drywall Prods. Liab. Lit.*,
  No. 09-2047, 2017 WL 5971622 (E.D. La. Nov. 30, 2017)...................................22

*Daimler AG v. Bauman*,
  134 S. Ct. 746 (2014)......................................................................................20, 21

*Day v. Air Methods Corp.*,
   No. 5:17-183, 2017 WL 4781863 (E.D. Ky. Oct. 23, 2017) ...................................................22

*Dayan v. Swiss-Am. Prod., Inc.*,
   No. 15-CIV-6895, 2017 WL 9485702 (E.D.N.Y. Jan. 3, 2017)............................................10

*DeBernardis v. NBTY, Inc.*,
   No. 17-C-6125, 2018 WL 461228 (N.D. Ill. Jan. 18, 2018).................................................22

*In re Dental Supplies Antitrust Litig.*,
   No. 16-CV-696, 2017 WL 4217115 (E.D.N.Y. Sept. 20, 2017) ...........................................21

*DJ Colman, Inc. v. Nufarm Americas, Inc.*,
   693 F. Supp. 2d 1055 (D.N.D. 2010)..................................................................................9

*Dover Ltd. v. A.B. Watley, Inc.*,
   423 F. Supp. 2d 303 (S.D.N.Y. 2006)................................................................................15

*Ebin v. Kangadis Food Inc.*,
   No. 13 Civ 2311, 2013 WL 6504547 (S.D.N.Y. Dec. 11, 2013)..........................................18

*Elkind v. Revlon Consumer Prod. Corp.*,
   No. 14-2484, 2015 WL 2344134 (E.D.N.Y. May 14, 2015) .................................................19

*Estes-El v. City of New York*,
   No. 96 CIV. 3463, 1998 WL 47828 (S.D.N.Y. Feb. 4, 1998)..............................................16

*Feller v. Transamerica Life Ins. Co.*,
   No. 2:16-CV-01378, 2017 WL 6496803 (C.D. Cal. Dec. 11, 2017)....................................22

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*,
   No. 17-CV-00564, 2017 WL 4224723 (N.D. Cal. Sept. 22, 2017) ......................................22

*In re Frito-Lay N. Am. Inc. All Nat'l Litig.*,
   No. 12-cv-2413, 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) ...........................................12

*Gonzalez v. J.P. Morgan Chase Bank, N.A.*,
   228 F. Supp. 3d 277 (S.D.N.Y. 2017)................................................................................15

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011)..........................................................................................................20

*Hughes v. The Ester C Co.*,
   317 F.R.D. 333 (E.D.N.Y. 2016), *reconsideration denied* No. 12-0041,
   2017 WL 3129767 (E.D.N.Y. July 21, 2017)......................................................................19

*Ivey v. Bd. Of Regents*,
   673 F.2d 266 (9th Cir. 1982) ............................................................................................16

*Johansson v. Cent. Garden & Pet Co.*,
  804 F. Supp. 2d 257 (D. N.J. 2011) ...................................................................9

*Kelley v. Microsoft Corp.*,
  No. C07-0475MJP, 2007 WL 2600841 (W.D. Wash. Sept. 10, 2007)...................12

*Kiobel v. Royal Dutch Petroleum Co.*,
  621 F.3d 111 (2d Cir. 2010)..................................................................................5

*Koenig v. Boulder Brands, Inc.*,
  995 F. Supp. 2d 274 (S.D.N.Y. 2014)..................................................................18

*Mahoney v. Endo Health Sols., Inc.*,
  No. 15CV9841, 2016 WL 3951185 (S.D.N.Y. July 20, 2016)...............................13

*Martin v. Monsanto Company*,
  No. ED CV 16-2168-JFW, 2017 WL 659014 (C.D.Cal. Feb.16, 2017)................11

*McDonnell v. Nature's Way Prods., LLC,*
  No. 16-CV-5011, 2017 WL 4864910 (N.D. Ill. Oct. 26, 2017) ............................22

*McMahon v. Take-Two Interactive Software, Inc.*,
  No. EDCV 13–02032-VAP, 2014 WL 324008 (C.D. Cal. Jan. 29, 2014) .............14

*McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co.*,
  938 F.2d 1544 (2d Cir. 1991)..................................................................................6

*Mills v. Polar Molecular Corp.*,
  12 F.3d 1170 (2d Cir. 1993)..................................................................................15

*Molock v. Whole Foods Mkt. Grp., Inc.*,
  No. 16-CV-02483 (APM), 2018 WL 2926162 (D.D.C. June 11, 2018) ................22

*N.Y. State Pesticide Coal., Inc. v. Jorling*,
  874 F.2d 115 (2d Cir. 1989)....................................................................................7

*Nicosia v. Amazon.com, Inc.*,
  834 F.3d 220 (2d Cir. 2016)..................................................................................18

*Ouaknine v. MacFarlane*,
  897 F.2d 75 (2d Cir. 1990)....................................................................................15

*Practice Mgmt. Support Servs., Inc. v. Cirque de Soleil, Inc.*,
  301 F. Supp. 3d 840 (N.D. Ill. 2018) ....................................................................22

*Proctor & Gamble Co. v. Chesebrough-Pond's Inc.*,
  747 F.2d 114 (2d Cir. 1984)..............................................................................6, 7

*Pungitore v. Barbera*,
No. 12-1795, 506 Fed. Appx. 40 (2d Cir. Dec. 20, 2012) ......................................................18

*Richards v. Johnson & Johnson, Inc.*,
No. 517-CV-00178, 2018 WL 6573332 (N.D.N.Y. Dec. 13, 2018)........................................13

*Sanchez v. Launch Tech. Workforce Sols., LLC*,
297 F. Supp. 3d 1360 (N.D. Ga. 2018) ..................................................................................22

*In re Sears, Roebuck & Co. Tools Mktg & Sales Practices Litig.*,
No. MDL-1703, 05c 4742, 05C 2623, 2006 WL 1443737
(N.D. Ill. May 17, 2006) .........................................................................................................12

*Shain v. Ellison*,
356 F.3d 211 (2d Cir. 2004).............................................................................................18, 19

*Shields v. Citytrust Bancorp, Inc.*,
25 F.3d 1124 (2d Cir. 1994)....................................................................................................14

*Skelton v. GM Corp.*,
660 F.2d 311 (7th Cir. 1981) ..................................................................................................12

*Sloan v. Gen. Motors Corp.*,
287 F. Supp. 3d 840 (N.D. Cal. 2018) ....................................................................................22

*Smith v. Hartz Mountain Corp.*,
No. 3:12-cv-00662, 2012 WL 5451726 (N.D. Ohio Nov. 7, 2012)...........................................8

*Spratley v. FCA US LLC*,
No. 17-cv-0062, 2017 WL 4023348 (N.D.N.Y. Sept. 12, 2017)............................................21

*Stoltz v. Fage Dairy Processing Indus., S.A.*,
No. 14-CV-3826, 2015 WL 5579872 (E.D.N.Y. Sept. 22, 2015) .....................................17, 18

*Sullivan v. Aventis, Inc.*,
No. 14-cv-2939-NSR, 2015 WL 4879112 (S.D.N.Y. Aug. 13, 2015) ....................................18

*Tickling Keys, Inc. v. Transamerica Fin. Advisors, Inc.*,
305 F. Supp. 3d 1342 (M.D. Fla. 2018).................................................................................22

*Tomasino v. Estee Lauder Companies Inc.*,
44 F. Supp. 3d 251 (E.D.N.Y. 2014) .....................................................................................19

*Tomassini v. FCA US LLC*,
326 F.R.D. 375 (N.D.N.Y. 2018) ...........................................................................................19

*Viggiano v. Hansen Natural Corp.*,
944 F. Supp. 2d 877 (C.D. Cal. 2013) ....................................................................................12

*Warren W. Fane, Inc. v. Tri–State Diesel, Inc.*,
    No. 1:12-cv-1903, 2014 WL 1806773 (N.D.N.Y. May 7, 2014) ...........................13

*Weisblum v. Prophase Labs, Inc.*,
    88 F. Supp. 3d 283 (S.D.N.Y. 2015)...................................................................18

*Wenokur v. ACA Equitable Life Ins. Co.*,
    No. CV-17-99165, 2017 WL 4357916 (D. Ariz. Oct. 2, 2017)............................22

*Whitaker v. Herr Foods, Inc.*,
    198 F. Supp. 3d 476 (E.D. Pa. 2016) .................................................................20

*Wilgus v. Hartz Mountain Corp.*,
    No. 3:12-cv-86, 2013 WL 653707 (N.D. Ind. Feb 19, 2013) ..................................9

**Statutes**

7 U.S.C. § 136 ..................................................................................... *passim*

15 U.S.C. § 2301 ................................................................................. *passim*

15 U.S.C. § 2310(d)(3)(A) ...............................................................................1, 13

15 U.S.C. § 2311(d) .............................................................................................10

New York Gen. Bus. Law § 350 ...........................................................................1

New York Gen. Bus. Law § 349 .......................................................................1, 17

**Rules and Regulations**

16 C.F.R. § 700.3 ......................................................................................11 n.4

40 C.F.R. § 125.25(f)(1) ........................................................................................1

40 C.F.R. § 152.25(f)(1) ....................................................................8, 9, 10, 14

Fed. R. Civ. P. 9 ..........................................................................3, 16, 14, 15

Fed. R. Civ. P. 12(b)(1) ........................................................................................2

Fed. R. Civ. P. 12(b)(2) ........................................................................................2

Fed. R. Civ. P. 12(b)(6) ........................................................................................2

**Other Authorities**

Consumer Reports® ............................................................................... *passim*

## INTRODUCTION

In this putative class action, Plaintiff Rebecca Yates challenges the statement "repels mosquitoes" as found on the label of California Baby Natural Bug Blend Repellent (the "Bug Repellent") marketed by Defendant California Natural Living, Inc. ("CNL").  As advertised, the product does not use synthetic chemical ingredients such as diethyltoluamide ("deet") typically found in pesticides that raise safety concerns.[1]   The Bug Repellent's active ingredients – cedarwood oil, citronella oil, and lemongrass oil - are expressly approved by the United States Environment Protection Agency ("EPA") for use in pesticide products. 40 C.F.R. 125.25(f)(1).  Nevertheless, Plaintiff alleges the representations on the Bug Repellent's label reflecting that it is a "bug repellent" and "repels mosquitoes" are false because the product is "ineffective." (Compl., ¶ 4)[2]

Notably, Plaintiff does not allege she ever used the Bug Repellent on herself.  Instead, she alleges her attorneys had the product tested and determined it was "ineffective." (*Id*. at ¶ 4.) Plaintiff additionally cites testing performed by Consumer Reports® showing the product was effective in repelling mosquitoes for half-an-hour after application.  Based solely on those factual allegations, Plaintiff brings seven causes of action against CNL on her own behalf and purportedly on behalf of a sub-class of New York purchasers: Count 1, Deceptive Acts or Practices, New York Gen. Bus. Law § 349 ("Section 349") (*id*. at ¶¶ 20-26); Count 2, False Advertising, New York Gen. Bus. Law § 350 ("Section 350") (*id*. at ¶¶ 27-33); Count 3, Breach of Express Warranty (*id*. at ¶¶ 34-39); Count 4, Violation of the federal Magnuson-Moss Warranty Act ("MMWA") (*id*. at ¶¶ 40-48); Count 5, Unjust Enrichment (*id*. at ¶¶ 49-53); and

---

[1]   *See* https://www.consumerreports.org/insect-repellent/how-safe-is-deet-insect-repellent-safety/ ("[M]any consumers have reservations about using [deet], and many readers ask Consumer Reports every year about it.").

[2]   Plaintiff's Class Action Complaint (Dkt No. 1) is referred to herein as the "Complaint" or "Compl."

Count 6 Fraud (*id*. at ¶¶ 54-59). Counts 3 through 6 are also brought on behalf of a national class of "all persons in the United States who purchased California Baby Natural Bug Blend Bug Repellent." (*Id.* at ¶13.)

Accepting Plaintiff's allegations as true, the Complaint should be dismissed pursuant to Federal Rules 12(b)(1), 12(b)(2) and 12(b)(6) for several independent reasons:

**First, Plaintiff's allegations are an improper demand for substantiation of Defendant's label claims.** New York law does not allow private plaintiffs to pursue actions under its consumer protection statutes to force companies to substantiate marketing claims, and courts have recognized that claims alleging only that a label claim is false without also alleging scientific evidence proving that falsity are disguised lack of substantiation claims. Here, Plaintiff has not alleged any specific scientific evidence disproving that CNL's Bug Repellent does, in fact, provide some level of protection against mosquitoes.

**Second, Plaintiff's request to enforce labeling requirements in addition to or different from those imposed by the EPA are expressly preempted by federal law.** The Federal Insecticide Fungicide and Rodenticide Act ("FIFRA") tasks the EPA with the responsibility of determining what are the permissible contents on pesticide labels and enforcing those requirements. The EPA has determined that products with the specific ingredients found in CNL's Bug Repellent are Minimum Risk Pesticides, and so may be labeled as pesticides. Plaintiff's attempt to obtain a state-law injunction against Defendant for a label consistent with the EPA's Minimum Risk Pesticide regulation would usurp the regulatory authority Congress bestowed on the EPA.

**Third, Plaintiff cannot allege a claim for breach of express warranty because the facts alleged in the Complaint show the representations at issue are true.** The only

allegation of specific testing results included in the Complaint show that CNL's Bug Repellent is effective against mosquitoes for half-an-hour. (Compl. ¶ 5, n.3) Consequently, the specifically alleged facts show the "bug repellent" and "repels mosquitoes" representations are in fact true, particularly when the product is applied "generously and often" as directed on the label.  (*Id*. at ¶ 2)

**Fourth, Plaintiff's claim under the Magnuson Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et. seq.,* fails because the label at issue does not create a "written warranty" within the meaning of the Act.**  The MMWA does not allow for claims regarding warranties subject to federal regulatory schemes, such as FIFRA that governs the pesticide labeling at issue in this case. Further, MMWA narrowly defines a "written warranty" as a "written affirmation of fact or written promise made in connection with the sale of a consumer product . . . that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time."  15 U.S.C. § 2301(6).  The label at issue makes no such promises. In addition, Plaintiff cannot allege the requisite $25 amount in controversy on her individual claim for federal jurisdiction under the MMWA.

**Fifth, Plaintiff has not alleged her fraud claim with the required specificity.**  Plaintiff alleges the product label misrepresents that it is a "bug repellent" and "repels mosquitoes" but does not provide specific allegations as to exactly why she contends the representations are false. The allegations about her counsel's testing do not disclose exactly what that testing showed. Rule 9 requires Plaintiff alleges those facts so the Court can determine if an actual misrepresentation is at issue.

**Sixth, Plaintiff's allegations are too vague and ambiguous to put Defendant on notice as to what it must defend.**  Plaintiff makes allegations regarding contradictory testing.

She alleges her counsel performed testing showing the Bug Repellent was ineffective "almost immediately" and alleged that Consumer Reports testing shows the product provides 30-minutes of protection.  Consequently, Defendant cannot tell if it should be responding to a claim that the product is completely ineffective, or a claim that protection for 30-minutes is inadequate to represent the product "repels mosquitoes."  If the case is to continue, Plaintiff should be required to make clear what is her contention about the product's effectiveness.

**Seventh, Plaintiff's unjust enrichment claim is improperly duplicative.**  New York courts do not allow plaintiffs to repeat an already alleged theory as a claim for unjust theory.

**Eighth, Plaintiff lacks standing for injunctive relief.**  Plaintiff lacks the requisite threat of future injury, as she does not and cannot allege that she faces the risk of mistakenly purchasing the product again.

**Ninth, the Court lacks specific jurisdiction over members of the putative class residing out New York.**  Under the United States Supreme Court's decision in *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017), the claims of the putative nationwide class must be dismissed for lack of personal jurisdiction, as Defendant is a company incorporated and residing in California over which this Court lacks general jurisdiction. The Court also lacks specific jurisdiction over the claims of putative nationwide class members that have no relationship with the forum. Consequently, all claims as to the putative nationwide class should be dismissed without leave to amend.

I.    **BACKGROUND**

Plaintiff alleges she purchased CNL's Bug Repellent (Compl., ¶ 7) and that in purchasing the product she relied on statements on its packaging it was a "bug repellent" and it "repels mosquitoes."  (*Id.* at ¶ 8.)  Plaintiff does not allege that any specific representation is made on the

product's packaging regarding the duration of the mosquito protection it provides.  A picture of the packaging included in the complaint includes the instruction the product is to be applied "generously and often" and that "repellency is based on scent."  (*Id*. at ¶ 2; Declaration of William Hurst in Support of Motion to Dismiss ("Hurst Decl."), Exhibit. A.

Plaintiff does not allege she ever actually applied the Bug Repellent to herself or others. Instead, she alleges laboratory testing commissioned by her attorneys, which indicated the product was "ineffective" at repelling two commons types of mosquitoes. (*Id*. at ¶ 4) Specifically, she alleges laboratory testing subjects were bitten "almost immediately," but otherwise provides no specific information as to the test results.  (*Id.*)  She further alleges the Bug Repellent also "flunked" testing conducted by a third-party organization, Consumer Reports®. (*Id*. at ¶ 5)  However, Plaintiff acknowledges the Consumer Reports® testing showed the product had some effectiveness as "the subjects were bitten by both species of mosquitoes within half an hour after application." (*Id.*  (underlining added).)  She bases all seven counts in the Complaint on these basic allegations that the testing showed the product to be "ineffective."

## II.   LEGAL ARGUMENT

### A.   <u>Motion to Dismiss Standard</u>.

"To survive a motion to dismiss, a Complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Kiobel v. Royal Dutch Petroleum Co*., 621 F.3d 111, 191 (2d Cir. 2010) (citations omitted).  A claim has facial plausibility only when the "Plaintiff's factual pleadings 'allow the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Id*.  This requires more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

**B.**      **Plaintiff's Allegations Amount to a Barred Lack of Substantiation Claim.**

The Complaint should be dismissed for the primary reason that it amounts to a claim that CNL's marketing is unsubstantiated, not that it is false.  Although Plaintiff makes a conclusory allegation that "[s]cientific evidence shows that the Product does not repel mosquitoes" (Compl., ¶ 3), she offers in support two contradicting allegations:  (1) testing her attorneys sponsored, but without specific findings of what that testing purportedly shows (*id.* ¶ 4), and (2) Consumer Reports® testing that shows the product was effective for 30-minutes at repelling mosquitoes and 6.7 hours at repelling Deer Ticks.  (*Id.* ¶ 5, n.3)  Consequently, she attempts to shift the burden to force CNL to substantiate its product works.  Private plaintiffs may not allege mere lack of substantiation in advertising, an area that is comprehensively regulated and enforced by public authorities.

The Second Circuit has long held that to plead and prove false advertising claims, "each plaintiff bears the burden of showing that the challenged advertisement is false and misleading, not merely that it is unsubstantiated by acceptable tests or other proof."  *Proctor & Gamble Co. v. Chesebrough-Pond's Inc.,* 747 F.2d 114, 119 (2d Cir. 1984) (internal citations omitted); *see also McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co.*, 938 F.2d 1544, 1549 (2d Cir. 1991) (if "tests [are] not directly referred to in connection with" the advertising statement, plaintiff must provide "scientific proof that the challenged advertisement was false.")

Plaintiff here fails to allege any scientific proof demonstrating CNL's marketing that the product offers protection from mosquitoes if applied "generously and often" is false, and consequently her claim is no more than an improper claim for lack of substantiation.  Plaintiff's allegation that during her attorneys' testing the subjects were "almost immediately" bitten by mosquitoes (Compl., ¶ 4) does not salvage her claim, as it fails to specify what is meant by "almost immediately."  If her testing showed the product deterred mosquitoes for half-an-hour,

like the Consumer Reports testing she also cites (*Id*. at ¶ 5), then her testing would not contradict the challenged label representations that the product "repels mosquitoes." Indeed, while Plaintiff may not consider 30-minutes of protection "effective" for her purposes, her dissatisfaction with the duration of protection would not make the representation false.

Further, Plaintiff does not allege a comparison between the number of bites the test subjects who used the Bug Repellent and the number of bites experienced by subjects who had no product applied to their arms.  It is thus impossible to conclude from the allegations whether the product was "ineffective."  Without specific allegations as to what was actually shown by her counsel's testing of the product, Plaintiff alleges no facts disproving the label representations and her conclusory allegation should be disregarded. Consequently, the Complaint lacks the specific factual allegations of scientific evidence directly contradicting the representations at issue that the Second Circuit in *Proctor & Gamble* recognized was needed to make Plaintiff's claim one for falsity, not lack of substantiation.

Plaintiff has not met her burden of pleading that CNL's label representations are false or misleading. At most, the alleged testing merely suggests that the "bug repellent" and "repels mosquitoes" claims are unsubstantiated.  The Complaint, which is premised wholly on alleged lack of substantiation that the product does not repel, should be dismissed in its entirety.

C.    **Plaintiff's Claims Regarding the Labeling of a Pesticide are Preempted Under FIFRA.**

The manufacture, sale, and use of pesticides are subject to the FIFRA, 7 U.S.C. § 136, *et seq.*, "a comprehensive scheme to regulate the use, sale and labeling, of pesticides—partly through [Environmental Protection Agency ("EPA")] registration of the substances." *N.Y. State Pesticide Coal., Inc. v. Jorling*, 874 F.2d 115, 117 (2d Cir. 1989).  To ensure the uniformity and the supremacy of the EPA's role in pesticide labeling, FIFRA provides that a state "*shall not*

*impose* or continue in effect *any* requirements for *labeling … in addition to or different from* those required under this subchapter."  7 U.S.C. § 136v(b) (emphasis added).

Under FIFRA, pesticides must be registered with the EPA prior to use.  7 U.S.C. 136a. The Administrator, however, may exempt from registration requirements "any pesticide which the Administrator determines either (1) to be adequately regulated by another Federal agency, or (2) to be of a character which is unnecessary to be subject to this subchapter in order to carry out the purposes of this subchapter." 7 U.S.C. 136w(b).  In 1988, pursuant to this authority, the EPA created an exemption for Minimum Risk Pesticides from FIFRA registration requirements for "Products containing [specific active ingredients] ... provided that all of the criteria of this section are met." 40 C.F.R. § 152.25(f)(1).  Among the approved active ingredients are cedarwood oil, citronella oil, and lemongrass oil (*id*.) – the same active ingredients in CNL's Bug Repellent (*see* Compl., ¶ 2 [picture of label including list of active ingredients]).[3]  Though exempt from registration with the EPA, "[w]hen construed and harmonized together, the language of FIFRA and the implementing regulations compels the conclusion that pesticide products that are exempt from FIFRA regulation requirements are not exempt from FIFRA labeling requirements."  *Bioganic Safety Brands v. Ament*, 174 F. Supp. 2d 1168, 1176 (D. Col. 2001).

District Courts across the country have found the application of state consumer fraud laws to be preempted where they would be used to impose labeling requirements separate from FIFRA.  In *Smith v. Hartz Mountain Corp.*, No. 3:12-cv-00662, 2012 WL 5451726 at *4 (N.D. Ohio Nov. 7, 2012), the Court dismissed a consumer fraud claim, holding "any claim that asserts Hartz is liable to Plaintiffs for producing a product label in a manner consistent with EPA's

---

[3]  A more legible copy of the label with ingredient list is attached to the supporting Hurst Declaration at **Exhibit A**.

requirements seeks to impose an additional or different labeling requirement, and is preempted by FIFRA. Also, in *DJ Colman, Inc. v. Nufarm Americas, Inc.,* 693 F. Supp. 2d 1055 (D.N.D. 2010), the court held a cause of action under North Dakota's Consumer Fraud Act to be preempted where the state statute was "not genuinely equivalent to FIFRA's obligation under 7 U.S.C. § 136(q)(1)(A)." In *Wilgus v. Hartz Mountain Corp.*, No. 3:12-cv-86, 2013 WL 653707, at *5 (N.D. Ind. Feb 19, 2013), the court dismissed labeling claims brought under Indiana Consumer Fraud Act, since "challenges to the adequacy of a pesticide's label or warning are preempted by FIFRA if they would require information different from what FIFRA requires." *Cf. Johansson v. Cent. Garden & Pet Co.,* 804 F. Supp. 2d 257, 261-62 (D. N.J. 2011) (Explaining, "[i]f Plaintiffs' claims amount to labeling requirements, they will be preempted by FIFRA," but finding no preemption because claims at issue did not seek to alter a label).

Plaintiff's claims here plainly seek to alter a label in a manner inconsistent with the EPA's regulations implementing FIRFA. Plaintiff seeks injunctive and other relief premised on a challenge to the statements "bug repellent" and "repels mosquitoes" on the labels of the Bug Repellent. In seeking such relief, Plaintiff ignores the EPA's, pursuant to its authority under FIFRA, recognition that products containing the active ingredients used in CNL's Bug Repellent may be sold and labeled as pesticides. 40 C.F.R. § 152.25(f)(1).

Plaintiff challenges the presence on the Bug Repellent's label of statements indicating it is, in fact, a pesticide, *i.e.*, that it is a "bug repellent" and "repels mosquitoes." (Compl., ¶ 2) Plaintiff does not allege the labeling, ingredients, or any other aspect of the product violates FIFRA. In fact, likely in an attempt to avoid FIFRA preemption, Plaintiff fails to allege or acknowledge the Bug Repellent is governed by FIFRA and its labeling requirements. The absence of such allegations does not remove the Bug Repellent from the EPA's authority.

Moreover, Plaintiff's challenge to the claims "bug repellent" and "repels mosquitoes" is a direct challenge to the EPA's determination the active ingredients, expressly identified by the EPA as insecticide active ingredients, are bug repellents that repel mosquitoes.  40 C.F.R. § 152.25(f)(1). Consequently, Plaintiff is not seeking enforcement of the applicable federal regulatory standard; instead, she seeks a judgment the EPA is wrong in setting labeling standards for such pesticides that allow them to be marketed as pesticides, *i.e.*, products that repel bugs. Such claims are plainly preempted. *See Bioganic Safety Brands*, 174 F. Supp. 2d at 1177 (D. Col. 2001) (finding state statute prohibiting safety claims on insect repellent was preempted as applied to Minimum Risk Pesticide for attempting to impose labeling requirement other than that found in EPA regulation).

> **D.**     **Plaintiff's MMWA Claim Fails.**
>
> **(1)     The MMWA Does Not Apply to Pesticide Labeling Because Such Labeling Is "Otherwise Governed by Federal Law"**

Plaintiff's Fourth Count for violation of the MMWA based on statements found on the Bug Repellent's label are precluded by the MMWA. Compl., ¶¶ 40-48.  Specifically, the MMWA states expressly it is "inapplicable to any written warranty the making or content of which is otherwise governed by Federal law." 15 U.S.C. § 2311(d).  As discussed, FIFRA and its implementing regulations govern the labeling of pesticide products and, thus, the MMWA cannot be used to attack label statements on products subject to their own federal statutory scheme. *See*, *e.g.*, *Dayan v. Swiss-Am. Prod., Inc.*, No. 15-CIV-6895, 2017 WL 9485702, at *12 (E.D.N.Y. Jan. 3, 2017), report and recommendation adopted, No. 15-CV-6895, 2017 WL 1214485 (E.D.N.Y. Mar. 31, 2017) (finding MMWA inapplicable to sunscreen labeling subject to FDCA regulations); *Bates v. Gen. Nutrition Ctrs., Inc.*, 897 F. Supp. 2d 1000, 1002 (C.D.Cal. 2012) (holding the MMWA inapplicable because FDCA governs dietary supplement labeling).  As

FIFRA governs the pesticide labeling at issue, the MMWA claim must be dismissed without leave to amend.

### (2)   Plaintiff Fails to State a Claim Under the MMWA

Plaintiff's MMWA claim also fails because she does not allege a "written warranty" within the meaning of the Act.  Under the MMWA, "written warranty" is narrowly defined as:

> (A)  Any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is *defect free or will meet a specified level of performance over a specified period of time,* or
>
> (B)  Any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking….

15 U.S.C. § 2301(6) (emphasis added).[4]

The statements "bug repellent" and "repels mosquitoes" do not fall within the first definition of a warranty because the statements are not promises regarding a defect-free product, nor do they guarantee a *specific level of performance over a specific time period.*  Instead, the challenged statements are a general "product description" rather than a promise that the Bug Repellent is defect free.  *See, e.g., Martin v. Monsanto Company,* No. ED CV 16-2168-JFW, 2017 WL 659014 at *5 (C.D.Cal. Feb.16, 2017) (dismissing MMWA claim because label statement that concentrate product "makes up to" a certain number of gallons was product

---

[4]   This definition of "written warranty" is narrower than that of many state warranty laws and the Uniform Commercial Code.  *See, e.g.,* 16 C.F.R. § 700.3 (July 13, 1977) (acknowledging that "express warranties under the [UCC]" may not be "written warranties under this Act").  As the Federal Trade Commission explained in its regulatory interpretation of the relevant provisions of the MMWA: "Certain representations, such as energy efficiency ratings for electrical appliances, care labeling of wearing apparel, and other product information disclosures may be express warranties under the Uniform Commercial Code.  However, these disclosures alone are not written warranties under this Act.  Section 101(6) provides that a written affirmation of fact or a written promise of a specified level of performance must relate to a specified period of time in order to be considered a 'written warranty.'  A product information disclosure without a specified time period to which the disclosure relates is therefore not a written warranty."  16 C.F.R. § 700.3.

description not a promise); *In re Sears, Roebuck & Co. Tools Mktg & Sales Practices Litig.*, No. MDL-1703, 05c 4742, 05C 2623, 2006 WL 1443737, at *4 (N.D. Ill. May 17, 2006) (dismissing MMWA claim because "Made in USA" is a "product description," not a promise of performance).

Even if the statements could somehow be construed as a promise or guarantee, it clearly does not "specify a level of performance over a specified period of time" and thus, Plaintiff cannot state a claim under the MMWA. *See Bowling v. Johnson & Johnson*, 65 F. Supp. 3d 371, 378 (S.D.N.Y. 2014) (finding representations that mouthwash would "restore enamel" were product descriptions, not a promise of performance over time, despite the presence of a "best buy" date on the bottle); *In re Frito-Lay N. Am. Inc. All Nat'l Litig.*, No. 12-cv-2413, 2013 WL 4647512, at *17 (E.D.N.Y. Aug. 29, 2013) (court held that an "All Natural" label does not "constitute a promise that the product 'will meet a specified level of performance over a specified period of time'"); *Skelton v. GM Corp.,* 660 F.2d 311, 316 n.7 (7th Cir. 1981) ("A product information disclosure without a specified time period to which the disclosure relates is … not a written warranty."); *Viggiano v. Hansen Natural Corp.,* 944 F. Supp. 2d 877, 898, n. 45 (C.D. Cal. 2013) ("Even if the court were to construe 'premium' as a guarantee of a specific level of performance, the MMWA would still be inapplicable, as the guarantee does not reference a 'specified period of time' and is thus not a 'written warranty' as defined by the statute."); *Kelley v. Microsoft Corp.,* No. C07-0475MJP, 2007 WL 2600841, at *5 (W.D. Wash. Sept. 10, 2007) (dismissing MMWA claim, "Windows Vista Capable" stickers lack "temporal element" required to constitute a warranty).

As Plaintiff has not alleged – and cannot allege – a "written warranty" under the MMWA, the MMWA claim must be dismissed without leave to amend.

In addition, the MMWA requires for federal court jurisdiction that any individual claim under the MMWA must be for $25 or more. *Mahoney v. Endo Health Sols., Inc.*, No. 15CV9841, 2016 WL 3951185, at *7 (S.D.N.Y. July 20, 2016); 15 U.S.C. § 2310(d)(3)(A). Plaintiff has not alleged, nor could she, that her individual claim for the purchase of single container of Bug Repellent meets that jurisdictional amount. Consequently, her MMWA claim additionally should be dismissed without leave to amend for lack of federal court jurisdiction.

**E.** **Plaintiff Cannot Bring Claims for Breach of Express Warranty Because the Challenged Statements are True.**

"'New York breach of express warranty claims require (i) a material statement amounting to a warranty; (ii) the buyer's reliance on this warranty as a basis for the contract with his immediate seller; (iii) the breach of this warranty; and (iv) injury to the buyer caused by the breach.'" *Richards v. Johnson & Johnson, Inc.*, No. 517-CV-00178, 2018 WL 6573332, at *4 (N.D.N.Y. Dec. 13, 2018) (quoting *Babayev v. Medtronic, Inc.*, 228 F. Supp. 3d 192, 216 (E.D.N.Y. 2017); see also *Warren W. Fane, Inc. v. Tri–State Diesel, Inc.*, No. 1:12-cv-1903, 2014 WL 1806773, *7 (N.D.N.Y. May 7, 2014) ("To prevail on an express warranty claim, a Plaintiff must 'show that there was an "affirmation of fact or promise by the seller, the natural tendency of which [was] to induce the buyer to purchase" and that the warranty was relied upon[.]' "(quoting *Schimmenti v. Ply Gem Indus., Inc.*, 156 A.D.2d 658, 659, 549 N.Y.S.2d 152 (2d Dep't 1989)).

Plaintiff's express warranty claim fails because she cannot establish any breach of the "warranty" that she seeks to enforce. Here, Plaintiff's warranty claim, like her other claims, is based on the statements "bug repellent" and "repels mosquitoes" on the Bug Repellent's label. (Compl., ¶2) Although the Complaint includes conclusory allegations that those statements are false (*Id.*, ¶¶ 29, 34, 44, 55, 71), there are no specific allegations substantiating the conclusion

the label's statements are false and the conclusory allegations by themselves are insufficient to meet Plaintiff's burden to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The only specific factual allegation of testing results Plaintiff alleges is the Consumer Reports' testing (Compl., ¶ 5.), which as Plaintiff acknowledges, shows the Bug Repellent effective for up to 30-minutes after application.  (*Id.*)[5]  That result is consistent with the EPA's determination the active ingredients in the Bug Repellent - cedarwood oil, citronella oil, and lemongrass oil – are approved active ingredients for use in pesticide products.  40 C.F.R. § 152.25(f)(1).  Plaintiff may have wanted a longer acting pesticide, but that desire does not make the minimal representation on the product that it repels mosquitoes false.  In the absence of allegations establishing that factual claims on the product are false, the breach of express warranty claim must be dismissed.

**F.    Plaintiff's Fraud Claim Must be Dismissed for Lack of Specificity.**

Allegations of fraud must meet the heightened pleading requirements of Rule 9(b), which applies when a complaint specifically alleges fraud as an essential element of a claim. *See Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1127 (2d Cir. 1994); Fed. R. Civ. P. 9(b).

---

[5]    Plaintiff cites to the results of Consumer Reports' testing for multiple pesticide products, including CNL's Natural Bug Blend, and includes a link to a Consumer Reports' Insect Repellent Ratings summary webpage. (Compl. ¶ 5, n.3).  That web page provides 10 columns of data for each tested repellent: Brand, Price, Overall Score, Active Ingredients, Effectiveness Aedes Mosquitoes (hrs.), Effectiveness Culex Mosquitoes (hrs.), Effectiveness Deer Ticks (hrs.) Type, Cost per oz. ($), Resists damage to materials. As to the effectiveness ratings, the "Guide to the Ratings" statement at the bottom of the page provides: "Effectiveness Aedes Mosquitoes (hrs.): The number of hours that the product lasted before Aedes mosquitoes began to bite. Effectiveness Culex Mosquitoes (hrs.): The number of hours that the product lasted before Culex mosquitoes began to bite.  Effectiveness deer ticks (hrs.): The number of hours that the product lasted before deer tick nymphs crossed onto a treated forearm." CNL's Natural Bug was rated as lasting 0.5 hours for effectiveness against the two types of mosquitoes and 6.7 hours for effectiveness against Deer Ticks.  A copy of a printout of that webpage as accessed on January 24, 2019, is attached to the Hurst Decl. as Exhibit B.  *See McMahon v. Take-Two Interactive Software, Inc.*, No. EDCV 13–02032-VAP (SPx), 2014 WL 324008, at *2 (C.D. Cal. Jan. 29, 2014) (noting that "Courts have found website...articles to be a proper subject for judicial notice where those materials are relied on by a plaintiff or concern facts at issue in a complaint").

Rule 9(b)'s particularity requirement is satisfied when a plaintiff properly pleads "the time, place, speaker, and sometimes even the content of the alleged misrepresentation." *Ouaknine v. MacFarlane*, 897 F.2d 75, 79 (2d Cir. 1990); *Braun v. Giarratano*, 2002 WL 1916368, at *5 (N.D.N.Y. Jul. 30, 2002).   Rule 9(b)'s primary purposes are threefold: (1) to provide the defendant with fair notice of the claims; (2) to protect the defendant from harm to his reputation or goodwill by unfounded allegations of fraud; and (3) to reduce the number of strike suits. *Dover Ltd. v. A.B. Watley, Inc*., 423 F. Supp. 2d 303, 317 (S.D.N.Y. 2006). "Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'" *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) (citation omitted). " 'The plaintiff must set forth what is false or misleading about a statement, and why it is false.'"  *Gonzalez v. J.P. Morgan Chase Bank, N.A.*, 228 F. Supp. 3d 277, 289 (S.D.N.Y. 2017) (quoting, in parenthetical, *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).

As noted, Plaintiff fails to allege facts showing the label representations on which she relied are false. Despite her conclusory characterizations the Bug Repellent is "ineffective and worthless," (Compl. ¶ 3), Plaintiff alleges no specific facts showing why the label claims are false. What exactly her counsel's testing showed is not alleged – only in her opinion the product failed the test "almost immediately."  (*Id.* ¶ 4) If by "almost immediately" Plaintiff means the product provided about half-an-hour of protection from mosquitoes as indicated by the Consumer Reports testing she incorporates into her pleading, (*id.* ¶ 5, n.3), then her claims sounding in fraud would on their face be nonsensical.  Plaintiff cannot with a straight face say it is misrepresentation to describe a product as a "bug repellent" that "repels mosquitoes" if her evidence shows the product in fact reduces the risk of mosquito bites for half an hour.

There is simply no way for the Court to discern now whether that is what Plaintiff's counsel's testing actually shows, as she has intentionally avoided including such specifics in her Complaint. Rule 9 does not allow Plaintiff to engage in such threadbare pleading.  If Plaintiff contends the claims on the labels are misrepresentations, the Complaint must allege exactly why.  If Plaintiff's own testing is the sole basis of her misrepresentation claim, then the results of that testing should be attached to the Complaint or fully set forth within it.  Consequently, Plaintiff's claim for fraud (Count VI) should be dismissed in its entirety.

## G.      Plaintiff's Allegations Are Improperly Vague and Ambiguous.

Besides the other defects noted above, the Complaint's allegations are unacceptably vague and uncertain.  *See Estes-El v. City of New York*, No. 96 CIV. 3463, 1998 WL 47828, at *1 (S.D.N.Y. Feb. 4, 1998) ("Plaintiff's vague allegations do not state viable claims and cannot survive this motion to dismiss."); *see also Ivey v. Bd. Of Regents*, 673 F.2d 266, 268 (9th Cir. 1982) (explaining that vague allegations are not sufficient to withstand a motion to dismiss).  In particular, Plaintiff's allegations regarding her counsel's testing of the Bug Repellent lacks sufficient specificity to determine whether they support her claims.   Plaintiff alleges "Defendant's Product failed the laboratory testing almost immediately – all of the test subjects were bitten by both species of mosquitoes." (Compl. ¶ 4)  In the very next paragraph, Plaintiff acknowledges the Consumer Reports' testing established the product was effective for 30-minutes.  (*Id*. ¶ 5)  Consequently, it is unclear if Plaintiff is alleging the Consumer Reports testing was wrong, and her counsel's testing indicates the product has no repellency effect on mosquitoes whatsoever, or if she is contending 30-minutes of protection against mosquitoes is in some manner inconsistent with the label's representation that the product repels mosquitoes.  Given the ambiguity, CNL is unreasonably disadvantaged in preparing a response.  If the Court

allows this action to go forward, it should require Plaintiff amend to resolve the uncertainty in the Complaint.

### H.      Plaintiff's Unjust Enrichment Claim Fails Because It Is Duplicative of Plaintiff's Other Claims.

In *Corsello v. Verizon N.Y., Inc.*, the New York Court of Appeals cautioned:

> [U]njust enrichment is not a catchall cause of action to be used when others fail. It is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff. . . . An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim.

18 N.Y.3d 777, 790 (2012) (citations omitted).  The court noted such a claim is typically limited to where "the defendant, though guilty of no wrongdoing, receives money to which he or she is not entitled." *Id.*  It held an unjust enrichment claim should be dismissed where the defendant allegedly trespassed on and took plaintiff's property because "[t]o the extent that [plaintiff's] claims [for inverse condemnation, trespass, and violation of Section 349] succeed, the unjust enrichment claim is duplicative; if plaintiffs' other claims are defective, an unjust enrichment claim cannot remedy the defects." *Id.* at 791.

Courts applying *Corsello* have dismissed unjust enrichment claims in cases where defendants were alleged to have mislabeled their products or failed to warn of hazards on the grounds the unjust enrichment claim was duplicative. For example, in *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826, 2015 WL 5579872 (E.D.N.Y. Sept. 22, 2015), the plaintiff brought a variety of claims under New York law predicated on the allegation that the label "Total 0%" was misleading as to the contents of the yogurt marketed by the defendant. *Id.* at *2.  After dismissing the negligent misrepresentation claim for lack of an allegation of a special relationship, the court dismissed the unjust enrichment claim on the ground "plaintiffs

have not shown how their unjust enrichment claim differs from their negligent misrepresentation claim . . . ." *Id*. at *27.

Similarly, in *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274 (S.D.N.Y. 2014), the plaintiff brought claims for violation of the consumer protection statute, breach of express warranty, and unjust enrichment against a seller of milk alleging that the defendant deceptively labeled its product "fat free." *Id*. at 276-77.  The court dismissed the unjust enrichment claim on the ground that it merely replicated the other claims:

> [T]o the extent that Plaintiffs' other claims succeed, "the unjust enrichment claim is duplicative," and "if plaintiffs' other claims are defective, an unjust enrichment claim cannot remedy the defects."

*Id*. at 291 (quoting *Corsello*, 18 N.Y.3d at 790-91).[6]

Here, Plaintiff's unjust enrichment claim is predicated on exactly the same alleged conduct underlying her other claims. It therefore fails as a matter of law.

## I.   Plaintiff Lacks Article III Standing to Seek Injunctive Relief.

To meet the constitutional minimum of standing for injunctive relief, a plaintiff "must prove the likelihood of *future* or *continuing* harm." *Pungitore v. Barbera*, No. 12-1795, 506 Fed. Appx. 40, 41-42 (2d Cir. Dec. 20, 2012) (emphasis in original) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).  Past injuries "do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016).  Further, an "abstract" threat of injury is "not enough." *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) (quoting

---

[6]   See also *Sullivan v. Aventis, Inc*., No. 14-cv-2939-NSR, 2015 WL 4879112, at *10 (S.D.N.Y. Aug. 13, 2015) (dismissing unjust enrichment claim against pharmaceutical manufacturer because "[p]laintiff [] alleged actionable wrongs, and the unjust enrichment claim [was] based on identical facts"); *Weisblum v. Prophase Labs, Inc*., 88 F. Supp. 3d 283, 296-97 (S.D.N.Y. 2015) (dismissing unjust enrichment claim as duplicative of warranty claim); *Ebin v. Kangadis Food Inc.*, No. 13 Civ 2311, 2013 WL 6504547 at *7 (S.D.N.Y. Dec. 11, 2013) (dismissing unjust enrichment claim as duplicative of negligent misrepresentation claim).

*O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)). Rather, the risk of harm must be "real and immediate," not "conjectural" or "hypothetical." *Id.*

Plaintiff has not alleged she is likely to suffer future harm from CNL's alleged misrepresentations. Plaintiff assert that "she would not have purchased the Product at all, or would have only been willing to pay a substantially reduced price for the Product, had she known that these representations were false and misleading." Compl., ¶ 8. Where it is clear from the complaint that plaintiffs "are unlikely to buy the class products again," courts in this Circuit have routinely found that "they lack standing to seek a forward-looking injunction." *Tomassini v. FCA US LLC*, 326 F.R.D. 375, 390 (N.D.N.Y. 2018) (holding that plaintiff lacked standing to seek injunctive relief in class action where there was no indication plaintiff would purchase vehicle with alleged defect again); *In re Avon Anti-Aging Skincare Creams & Prod. Mktg. & Sales Practices Litig.*, No. 13-150, 2015 WL 5730022, at *8 (S.D.N.Y. Sept. 30, 2015) (holding that plaintiffs lacked standing to seek injunctive relief where "[e]ach Plaintiff state[d] that, if she had been aware of the alleged truth about Avon's products, she would not have bought class products.").[7]

Moreover, even if Plaintiff was to purchase the Bug Repellent in the future, there is "no danger that they will again be deceived" since she is "now aware of the alleged misrepresentations that [she] challenge[s]." *Elkind v. Revlon Consumer Prod. Corp.*, No. 14-2484, 2015 WL 2344134, at *3 (E.D.N.Y. May 14, 2015). It is simply implausible that Plaintiff would "actually be personally deceived" again by the same alleged misrepresentations. *Chang v.*

---

[7] See also *Tomasino v. Estee Lauder Companies Inc.*, 44 F. Supp. 3d 251, 256 (E.D.N.Y. 2014) (holding that plaintiff lacks standing to seek injunctive relief where the complaint "made clear that she . . . would not have purchased [the challenged beauty product] in the first place absent the allegedly misleading advertisements."); *Hughes v. The Ester C Co.*, 317 F.R.D. 333, 357 (E.D.N.Y. 2016), reconsideration denied No. 12-0041, 2017 WL 3129767 (E.D.N.Y. July 21, 2017) (holding that plaintiffs lacked standing because they "both allege[d] that, if they had been aware of the alleged truth of the Products, they would not have bought them.").

*Fage USA Dairy Indus., Inc.*, No. 14-3826, 2016 WL 5415678, at *5 (E.D.N.Y. Sept. 28, 2016) ("*Chang*"); *see also Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476 (E.D. Pa. 2016) ("Because Plaintiff is now familiar with Defendant's labeling practices, it is a 'speculative stretch' to say Plaintiff would 'unwittingly accept' the labels' assertions in the future.").

Since Plaintiff has failed to allege a "real or immediate threat of injury," "[she] lack[s] standing to seek injunctive relief individually and on behalf of a class." *Chang*, at *5; *see also Albert v. Blue Diamond Growers*, 151 F. Supp. 3d 412, 417 (S.D.N.Y. 2015) ("[N]amed plaintiffs must have standing in order to seek injunctive relief on behalf of the class.").

**J.     This Court Lacks Personal Jurisdiction with Respect to Claims Asserted on Behalf of Putative Nationwide Class Members Located Outside New York for Purchases Outside New York.**

The Court should dismiss the claims asserted on behalf of the proposed nationwide class for lack of personal jurisdiction.  To satisfy due process for asserting personal jurisdiction over CNL, Plaintiff must demonstrate CNL has sufficient contacts with this forum to establish either specific or general personal jurisdiction.  *See Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014); *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017).  General personal jurisdiction allows a court to hear all claims against a defendant.  It requires the defendant be essentially "at home" in the forum. *See Daimler*, 134 S. Ct. at 749. For a court to exercise specific personal jurisdiction, however, "'the suit' must 'aris[e] out of or relat[e] to the defendant's contacts with the forum." *Bristol-Myers*, 137 S. Ct. at 1780 (*quoting Daimler*, 134 S. Ct. at 754) (alterations and emphasis in original). Specific personal jurisdiction permits only "adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation marks omitted).

The Complaint fails to allege facts to establish general jurisdiction over CNL, or specific personal jurisdiction as to the claims of putative nationwide class members residing outside New York. Under *Daimler*, "except in a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016). Plaintiffs allege CNL is incorporated under California law and its principle place of business is in California. Compl, ¶ 9. Plaintiff does not allege "continuous and systematic" affiliations with New York sufficient to render CNL "at home" in the forum. Therefore, CNL is not subject to general personal jurisdiction in New York.

Further, although Plaintiff alleges that she is a resident of New York (Compl., ¶ 8), she seeks to represent a nationwide class of consumers who purchased the listed products anywhere in the United States. *Id.*, ¶ 13. The Complaint alleges no facts suggesting the nationwide class's claims arise from or relate to any contacts or affiliations CNL has with New York. As the Supreme Court has made clear, to satisfy due process, it is not enough the claims of the non-resident proposed class members are similar to those asserted by the resident. Rather, where no connection is alleged between a claim and a defendant's activity in the forum, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers*, 137 S. Ct. at 1781. The analysis in Bristol-Myers is controlling: "Personal jurisdiction in class actions must comport with due process just the same as any other case." *In re Dental Supplies Antitrust Litig.*, No. 16-CV-696, 2017 WL 4217115, at *1 (E.D.N.Y. Sept. 20, 2017) (class action claims dismissed for lack of personal jurisdiction, citing *Bristol-Myers*); *see also Spratley v. FCA US LLC*, No. 17-cv-0062, 2017 WL 4023348 (N.D.N.Y. Sept. 12, 2017) (dismissing claims by non-resident plaintiffs in class action, where no connection was

shown between plaintiffs' claims and defendants' contacts with New York, citing *Bristol-Myers*).

Although there is disagreement within the federal courts,[8] numerous district courts have ruled the *Bristol-Myers* decision is applicable in class actions and dismissed claims of class members outside the forum for lack of specific jurisdiction. *See Chavez v. Church & Dwight Co.*, No. 17 C 1948, 2018 WL 2238191, at *10 (N.D. Ill. May 16, 2018); *Practice Mgmt. Support Servs., Inc. v. Cirque de Soleil, Inc.*, 301 F. Supp. 3d 840, 864 (N.D. Ill. 2018); *Anderson v. Logitech, Inc.,* No. 17-C-6104, 2018 WL 1184729, at *1 (N.D. Ill. Mar. 7, 2018) (slip op.); *DeBernardis v. NBTY, Inc*., No. 17-C-6125, 2018 WL 461228, at *2 (N.D. Ill. Jan. 18, 2018) (slip op.); *McDonnell v. Nature's Way Prods*., LLC, No. 16-CV-5011, WL 4864910 at *4 (N.D. Ill. Oct. 26, 2017); *Wenokur v. ACA Equitable Life Ins. Co*., No. CV-17-99165, 2017 WL 4357916 at *4, n.4 (D. Ariz. Oct. 2, 2017) (slip op.); *see also Maclin v. Reliable Reports of Tex.*, Inc., No. 1:17-CV-2612, 2018 WL 1468821, at *3–4 (N.D. Ohio Mar. 26, 2018) (holding *Bristol-Myers* applies to "mass actions" under the Fair Labor Standards Act (FLSA), and rejecting argument that *Bristol-Myers* is limited to mass torts or state actions).  A comparable number of federal courts have ruled to the contrary.[9]  However, this Court should follow the superior reasoning of the Courts holding that the constitutional requirements of due process do

---

[8]    One federal district court has recently found sufficient substantial ground for a difference of opinion on the issue to warrant interlocutory review.  *See Molock v. Whole Foods Mkt. Grp., Inc.*, No. 16-CV-02483 (APM), 2018 WL 2926162, at *3 (D.D.C. June 11, 2018).

[9]    S*ee Tickling Keys, Inc. v. Transamerica Fin. Advisors, Inc.*, 305 F. Supp. 3d 1342, 1351 (M.D. Fla. 2018); *Casso's Wellness Store & Gym, L.L.C. v. Spectrum Lab. Prods., Inc.*, No. 17-2161, 2018 WL 1377608, at *4–5 (E.D. La. Mar. 19, 2018) (slip op.); *Sanchez v. Launch Tech. Workforce Sols., LLC*, 297 F. Supp. 3d 1360, 1361 (N.D. Ga. 2018); *Sloan v. Gen. Motors Corp.*, 287 F. Supp. 3d 840, 854-856 (N.D. Cal. 2018); *Feller v. Transamerica Life Ins. Co.*, No. 2:16-CV-01378, 2017 WL 6496803, at *16–17 (C.D. Cal. Dec. 11, 2017) (slip op.); *In re Chinese-Manufactured Drywall Prods. Liab. Lit.*, No. 09-2047, 2017 WL 5971622, at *12–21 (E.D. La. Nov. 30, 2017) (slip op.); *Day v. Air Methods Corp.*, No. 5:17-183, 2017 WL 4781863, at *2 n.1 (E.D. Ky. Oct. 23, 2017) (slip op.); *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, No. 17-CV-00564, 2017 WL 4224723, at *5 (N.D. Cal. Sept. 22, 2017).

not vanish in a class action and dismiss the claims of the putative nationwide classes for lack of specific personal jurisdiction.

## CONCLUSION

For the foregoing reasons, California Natural Living, Inc. respectfully requests that this Court dismiss Plaintiff's Complaint in its entirety with prejudice.

Dated: January 25, 2019
      New York, New York

GREENBERG TRAURIG, LLP

By:    */s/ William A. Hurst*
     William A. Hurst
     Bar Roll No. 510271
     54 State Street, 6th Floor
     Albany, New York 12207
     Tel:  (518) 689-1400
     Fax:  (518) 689-1499
     Email:  hurstw@gtlaw.com


DIESCH FORREST, A.P.C.

Stephen E. Paffrath
(motion for *pro hac vice* admission
   forthcoming)
2207 Plaza Drive, Suite 300
Rocklin, California 95765
Tel:  (415) 845-5506
Fax:  (916) 740-6460
Email: Stephen@dieschforrestlaw.com


*Counsel for Defendant*
*California Natural Living, Inc.*

ALB 2177217v2