**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
**Albany Division**

---

REBECCA YATES, individually and on
behalf of all others similarly situated,

                              Plaintiff,

        v.

CALIFORNIA NATURAL LIVING, INC.,
                              Defendant.

---

Civil Action No. 1:18-cv-01415-GLS-
TWD


Hon. Gary L. Sharpe

---

## <u>PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS</u>

**BURSOR & FISHER, P.A.**
Philip L. Fraietta
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
Email: pfraietta@bursor.com

# TABLE OF CONTENTS

**PAGE(S)**

I.     INTRODUCTION ................................................................................. 1

II.    LEGAL STANDARD........................................................................... 2

III.   PLAINTIFF'S ALLEGATIONS DO NOT SUPPORT DEFENDANT'S
       REPRESENTATIONS ........................................................................ 3

IV.   PLAINTIFF ALLEGES THAT DEFENDANT'S LABEL REPRESENTATIONS
       ARE AFFIRMATIVELY FALSE AND MISLEADING.................................... 6

V.    DEFENDANT'S PREEMPTION ARGUMENT IS WRONG........................... 9

       A.    The EPA Did Not Require Defendant to Make False and
              Misleading Statements .............................................................. 9

       B.    The EPA Did Not Determine That The Product's Active
              Ingredients Are "Bug Repellents That Repel Mosquitoes" ................. 9

       C.    Plaintiff's Claims Do Not Impose Labeling Requirements ................. 10

       D.    FIFRA Prohibits False or Misleading Information ............................ 12

VI.   PLAINTIFF'S ALLEGATIONS SATISFY RULE 9(B) ................................. 15

VII.  PLAINTIFF STATES A CLAIM FOR UNJUST ENRICHMENT .................... 17

VIII. THIS COURT HAS SPECIFIC PERSONAL JURISDICTION OVER THE
       CLAIMS OF ABSENT CLASS MEMBERS.............................................. 18

       A.    The Claims Of Absent Class Members Are Irrelevant To Specific
              Personal Jurisdiction ................................................................ 18

       B.    *BMS* Does Not Support Dismissal Of The Non-New York Absent
              Class Members' Claims ............................................................ 21

IX.   DEFENDANT DOES NOT ARGUE FOR THE DISMISSAL OF PLANTIFF'S
       CLAIMS UNDER NEW YORK GENERAL BUSINESS LAW ("GBL") §§ 349 &
       350................................................................................................ 23

X.    LEAVE TO AMEND SHOULD BE FREELY GIVEN.................................. 23

XI.   CONCLUSION................................................................................. 24

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Abraham v. St. Croix Renaissance Grp., L.L.L.P.*,
  719 F.3d 270 (3d Cir. 2013) ............................................................................ 22

*Ackerman v. Coca–Cola Co.*,
  2010 WL 2925955 (E.D.N.Y. July 21, 2010) ................................................ 4, 5

*Aliano v. Quaker Oats Co.*,
  2017 WL 56638 (N.D. Ill. Jan. 4, 2017) .......................................................... 19

*AM Tr. v. UBS AG*,
  78 F. Supp. 3d 977 (N.D. Cal. 2015) ................................................................ 19

*AmBase Corp. v. City Investing Co. Liquidating Trust*,
  326 F.3d 63 (2d Cir. 2003) ................................................................................. 2

*Ansagay v. Dow Agrosciences LLC*,
  153 F. Supp. 3d 1270 (D. Haw. 2015) ............................................................. 11

*Ashcroft v. Iqbal*,
  566 U.S. 662 (2009) ....................................................................................... 2, 3

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007) ........................................................................... 2, 15

*Ault v. J.M. Smucker Co.*,
  2014 WL 1998235 (S.D.N.Y. May 15, 2014) .................................................... 4

*Bates v. Dow Agrosciences LLC*,
  544 U.S. 431 (2005) ................................................................... 10, 11, 12, 13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ....................................................................................... 2, 3

*Bioganic Safety Brands, Inc. v. Ament*,
  174 F. Supp. 2d 1168 (D. Colo. 2001) ............................................................. 14

*Bristol-Myers Squibb Co. v. Superior Court of Cal.*,
  137 S. Ct. 1773 (2017) ................................................................. 18, 21, 22, 23

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ......................................................................................... 20

*Campbell v. Freshbev LLC*,
322 F. Supp. 3d 330 (E.D.N.Y. 2018) ........................................................ 21

*Carias v. Monsanto Co.*,
2016 WL 6803780 (E.D.N.Y. Sept. 30, 2016) .......................................... 14

*Cipollone v. Liggett Grp., Inc.*,
505 U.S. 504 (1992) ................................................................................. 11

*Devlin v. Scardelletti*,
536 U.S. 1 (2002) ............................................................................... 19, 22

*DJ Coleman, Inc. v. Nufarm Americas, Inc.*,
693 F. Supp. 2d 1055 (D.N.D. 2010) ....................................................... 14

*Ebin v. Kangadis Food Inc.*,
2013 WL 6504547 (S.D.N.Y. Dec. 11, 2013) .......................................... 16

*Esposito v. Contec, Inc.*,
47 N.Y.S.3d 180 (4th Dep't 2017) ........................................................... 11

*Famular v. Whirlpool Corp*,
2017 WL 2470844 (S.D.N.Y. June 7, 2017) ............................................ 18

*Feller v. Transamerica Life Insurance Company*,
2017 WL 6496803 (C.D. Cal. 2017) ................................................... 21, 22

*Fitzhenry-Russell v. Dr. Pepper Snapple Group, Inc.*,
2017 WL 4224723 (N.D. Cal. Sept. 22, 2017) ................................ 19, 21, 22

*Fowlkes v. Adamec*,
432 F.3d 90 (2d Cir. 2005) ......................................................................... 2

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
317 F.R.D. 374 (S.D.N.Y. 2016) .............................................................. 20

*Gonzalez v. Costco Wholesale Corp.*,
2018 WL 4783962 (E.D.N.Y. Sept. 29, 2018) ..................................... 21, 22

*Gucciardi v. Bonide Prod., Inc.*,
28 F. Supp. 3d 383 (E.D. Pa. 2014) ......................................................... 13

*In re. Chinese-Manufactured Drywall Prods. Liability Litig.*,
2017 WL 5971622 (E.D. La. Nov. 30, 2017) ............................. 19, 20, 21, 23

*In re Clorox Consumer Litig.*,
2012 WL 3642263 (N.D. Cal. Aug. 24, 2012) ............................................ 8

*In re Dental Supplies Antitrust Litig.*,
  2017 WL 4217115 (E.D.N.Y. Sept. 20, 2017) .................................................. 22, 23

*In re Scotts EZ Seed Litig.*,
  304 F.R.D. 397 (S.D.N.Y. 2015) ........................................................................ 20

*In re Suprema Specialties, Inc. Sec. Litig.*,
  438 F.3d 256 (3d Cir. 2006) .............................................................................. 15

*In re: Methyl Teriary Butyl Ether*,
  457 F. Supp. 2d 324 (S.D.N.Y. 2006) ................................................................ 12

*Jackson v. Bank of Am., N.A.*,
  2018 WL 2381888 (W.D.N.Y. May 25, 2018) ..................................................... 19

*Jensen v. Cablevision Sys. Corp.*,
  2017 WL 4325829 (E.D.N.Y. Sept. 27, 2017) ..................................................... 21

*Jovel v. i-Health, Inc.*,
  2013 WL 5437065 (E.D.N.Y. Sept. 27, 2013) .................................................... 7, 9

*Keehfus Ltd. Partnership v. Fromkin Energy, LLC*,
  2007 WL 2454217 (N.D.N.Y Aug. 23, 2007) ...................................................... 17

*Koenig v. Boulder Brands, Inc.*,
  995 F. Supp. 2d 274 (S.D.N.Y. 2014) ................................................................. 5

*McDonnell v. Nature's Way Prods., LLC*,
  2017 WL 4864910 (N.D. Ill. Oct. 26, 2017) ...................................................... 22

*McNeil-P.P.C., Inc. v. Bristol-Myers Squibb Co.*,
  755 F. Supp. 1206 (S.D.N.Y. 1990) .................................................................... 8

*McNeil-P.P.C., Inc. v. Bristol-Myers Squibb Co.*,
  938 F.2d 1544 (2d Cir. 1991) ............................................................................. 8

*Mortellite v. Novartis Crop Prot., Inc.*,
  460 F.3d 483 (3d Cir. 2006) .............................................................................. 11

*Paulino v. Conopco, Inc.*,
  2015 WL 4895234 (E.D.N.Y. Aug. 17, 2015) ...................................................... 4

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) .......................................................................................... 20

*Procter & Gamble Co. v. Chesebrough-Pond's Inc.*,
  747 F.2d 114 (2d Cir. 1984) ............................................................................... 8

iv

*Quinn v. Walgreen Co.*,
   958 F. Supp. 2d 533 (S.D.N.Y. 2013) .................................................................. 7, 9, 18

*Sitt v. Nature's Bounty, Inc.*,
   2016 WL 5372794 (E.D.N.Y. Sept. 26, 2016) ......................................................... 7, 8

*Smith v. Hartz Mountain Corp.*,
   2012 WL 5451726 (N.D. Ohio Nov. 7, 2012) ............................................................. 13

*Snyder v. Farnam Companies, Inc.*,
   792 F. Supp. 2d 712 (D.N.J. 2011) ............................................................................ 12

*Speedfit LLC v. Woodway USA, Inc.*,
   53 F. Supp. 3d 561 (E.D.N.Y. 2014) .......................................................................... 17

*Spratley v. FCA US LLC*,
   2017 WL 4023348 (N.D.N.Y. Sept. 12, 2017) ...................................................... 22, 23

*Tomasino v. Estee Lauder Companies Inc.*,
   44 F. Supp. 3d 251 (E.D.N.Y. 2014) ............................................................................ 7

*Trend & Style Asia HK Co. v. Pac. Worldwide, Inc.*,
   2015 WL 4190746 (S.D.N.Y. July 10, 2015) .............................................................. 17

*U.S. ex rel. Polansky v. Pfizer, Inc.*,
   2009 WL 1456582 (E.D.N.Y. May 22, 2009) ........................................................ 15, 16

*Wenokur v. AXA Equitable Life Ins. Co.*,
   2017 WL 4357916 (D. Ariz. Oct. 2, 2017) ................................................................. 22

*Wilgus v. Hartz Mountain Corp.*,
   2013 WL 653707 (N.D. Ind. Feb. 19, 2013) ......................................................... 13, 14

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) ...................................................................................... 5

*Yoder v. Orthomolecular Nutrition Inst., Inc.*,
   751 F.2d 555 (2d Cir. 1985) ...................................................................................... 15

## STATUTES

7 U.S.C. § 136 .............................................................................................. 1, 2, 12, 13

New York General Business Law § 349 ................................................................... 8, 23

New York General Business Law § 350 ................................................................... 8, 23

**RULES**

Fed. R. Civ. P. 8(a)(3) ......................................................................................... 17

Fed. R. Civ. P. 9(b) ............................................................................................ 15

Fed. R. Civ. P. 12(b)(6) ......................................................................................... 2

Fed. R. Civ. P. 15(a)(2) ........................................................................................ 23

**REGULATIONS**

40 C.F.R. § 152.25(f)(1) .................................................................................. 9, 10

40 C.F.R. § 152.25(g)(3)(iii) ............................................................................. 14

40 C.F.R. § 156.10(a)(5)(ii) ............................................................................. 12

## I.      INTRODUCTION

Defendant's motion to dismiss ("MTD") argues that "the facts alleged in the Complaint show the representations at issue are true" because the Consumer Reports study cited in the Complaint "show[s] that CNL's Bug Repellent is effective against mosquitoes for half-an-hour." MTD at 2-3.  That is nonsense.  As explained in greater detail *infra* § III, the Consumer Reports study showed that the product *failed* to work at the 30-minute mark, the very earliest time it was tested.  This is consistent with EPA guidelines for laboratory tests of mosquito repellents, which does not even recommend testing sooner than 30 minutes following application.  The Complaint never cited any data suggesting that California Baby Natural Bug Repellent ("California Baby" or the "Product") works at all.  Moreover, no reasonable consumer would ever buy a bug repellent that could not even last until the 30-minute mark.

Defendant's other arguments also fail.  Defendant argues that Plaintiff's claims are impermissible "lack of substantiation claims."  MTD at 2.  But the Complaint clearly alleges that "Cutter Natural is a complete sham.  Scientific evidence shows that Cutter Natural does not repel mosquitos.  The product is ineffective and worthless."  Complaint ("Compl.") ¶ 3.  That is not a demand for substantiation.  That is a claim for false advertising based on two cited studies.

Similarly, Defendant argues that Plaintiff's claims are preempted under the Federal Insecticide Fungicide and Rodenticide Act ("FIFRA").  MTD at 2.  But Defendant neglects to mention that it never registered its product with the EPA, and the labeling claims on its packaging were completely voluntary.  Moreover, Defendant cannot claim that it complied with FIFRA, given that FIFRA explicitly prohibits the sale or distribution of any pesticide that is misbranded.  *See* 7 U.S.C. § 136(j)(a)(1)(E).  A product is misbranded if "its labeling bears any

statement, design, or graphic representation . . . which is false or misleading in any particular." *See* 7 U.S.C. § 136(q)(1)(A).

As detailed herein, Defendant's MTD should be denied.[1]

## II.    LEGAL STANDARD

Rule 12(b)(6) provides that a cause of action shall be dismissed if a complaint fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In ruling on a Rule 12(b)(6) motion, the court's task is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."  *AmBase Corp. v. City Investing Co. Liquidating Trust*, 326 F.3d 63, 72 (2d Cir. 2003) (internal quotation marks and citation omitted).  Therefore, in reviewing a motion to dismiss, a court "must accept the facts alleged in the complaint as true and construe all reasonable inferences in [the plaintiff's] favor."  *Fowlkes v. Adamec*, 432 F.3d 90, 95 (2d Cir. 2005) (citation omitted).

"To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'"  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (internal quotation marks and citations omitted).  Rather, the claim must be "plausible on its face."  *Id.* at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft*

---

[1] Plaintiff will no longer pursue her claims for violation of the Magnuson-Moss Warranty Act and for injunctive relief.

*v. Iqbal*, 566 U.S. 662, 678 (2009) (citation omitted).  Thus, the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*, but "does not impose a probability requirement," *Twombly*, 550 U.S. at 556.

## III.    PLAINTIFF'S ALLEGATIONS DO NOT SUPPORT DEFENDANT'S REPRESENTATIONS

According to Defendant, "the Consumer Reports testing . . . shows the Bug Repellent [is] effective for up to 30-minutes after application."  MTD at 14.  That is incorrect for several reasons.[2]

The Consumer Reports test did not demonstrate that the Product is "effective for up to 30-minutes after application" – or indeed that it is effective for *any* amount of time.  Consumer Reports test subjects were exposed to mosquitos *for the first time* 30 minutes after application of the Product:

> Testers had a different repellent applied to each of their forearms and, **starting 30 minutes later**, reached into an 8-cubic-foot cage (2 feet long x 2 feet wide x 2 feet high) containing 200 disease-free, female mosquitoes in need of a blood meal to lay their eggs.[3]

That means that California Baby failed the testing immediately.  Nothing in this test showed any protection against mosquito bites whatsoever.  This protocol is consistent with EPA guidelines for insect repellent tests, which set forth that "[a]pproximately 30 minutes after treatment with

---

[2] Defendant also argues that "Plaintiff does not allege she ever used the Bug Repellent on herself."  MTD at 1.  But it is unclear why Defendant would make this argument in light of Plaintiff's clear-cut allegation that she "used the Product as directed and it was ineffective to repel mosquitos."  Compl. ¶ 8.

[3] *See* https://www.consumerreports.org/media-room/press-releases/2015/05/my-entry-1/ (emphasis added).

3

the repellent, test subjects should insert their treated forearms into the cage for the first time."[4]
The EPA guidelines clearly contemplate that a repellent that does not work for at least 30
minutes is ineffective as an insect repellent.  Here, multiple rounds of testing showed that the
Product failed at the very first interval at which it was tested – 30 minutes after application.  *See*
Compl. ¶¶ 4.  None of the testing proves that the Product works for 30 minutes, it proves that it
fails immediately.  The fact that it fails at the 30-minute-mark does not mean it works for 29
minutes, as Defendant misleadingly suggests.

Moreover, no reasonable consumer would buy a mosquito repellent knowing that it
would fail to repel mosquitoes 30 minutes later.  And at a bare minimum, that is a factual
question for the jury to decide.  *See Paulino v. Conopco, Inc.*, 2015 WL 4895234, at *2
(E.D.N.Y. Aug. 17, 2015) ("What a reasonable consumer's interpretation of a seller's claim
might be is generally an issue of fact which is not appropriate for decision on a motion to
dismiss.") (citing *Ault v. J.M. Smucker Co.*, 2014 WL 1998235, at *6 (S.D.N.Y. May 15, 2014));
*Ackerman v. Coca–Cola Co.*, 2010 WL 2925955, at *17 (E.D.N.Y. July 21, 2010) (internal
quotation marks omitted) ("[w]hether a practice is deceptive, fraudulent, or unfair is generally a
question of fact which requires consideration and weighing of evidence from both sides and
therefore usually cannot be resolved through a motion to dismiss.").  Accordingly, it is
inappropriate at the pleading stage to determine, as a matter of fact, whether an express warranty
was formed.  Plaintiff's well-pled allegations stand on their own.

Defendant argues that the Product's representations "are in fact true, particularly when
the product is applied 'generously and often' as directed on the label" is specious.  MTD at 3.

---

[4]  *See* Product Performance Test Guidelines: OPPTS 810.3700: Insect Repellents to be Applied
to Human Skin [EPA 712-C-10-001], at 27 (available at
https://www.regulations.gov/document?D=EPA-HQ-OPPT-2009-0150-0011).

That contention is baseless – the tests cited in Plaintiff's complaint showed no such thing. Moreover, in the context of the label claims, "generously" and "often" are meaningless. The terms "generously" and "often" do not indicate that the Product must be re-applied at least every 30 minutes. Many insect repellents work for several hours per application. Thus, it is entirely reasonable for a consumer to think that "generously" and "often" mean re-apply every 2 hours, or even every 4 hours.

Moreover, this argument that Defendant's use of the words "generously" and "often" in small print on the back side of the label somehow puts consumers on notice that product cannot even repel mosquitoes for 30 minutes is legally wrong. It is well-settled that Defendant cannot use the back of a product's labeling to clear ambiguities on the front of a product's labeling. *See, e.g.*, *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939-40 (9th Cir. 2008) ("We do not think that the FDA requires an ingredient list so that manufactures can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception. Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging."); *Ackerman*, 2010 WL 2925955, at *16 ("the presence of a nutritional panel, though relevant, does not as a matter of law extinguish the possibility that reasonable consumers could be misled by vitaminwater's labeling and marketing"); *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 288 (S.D.N.Y. 2014) ("Because it is unclear to the Court whether, as a matter of law, a reasonable consumer might be confused or misled about the fat content of Smart Balance based upon its packaging, the Court DENIES Defendant's motion to dismiss on that basis.").

## IV.    PLAINTIFF ALLEGES THAT DEFENDANT'S LABEL REPRESENTATIONS ARE AFFIRMATIVELY FALSE AND MISLEADING

Defendant argues that the "Complaint should be dismissed for the primary reason that it amounts to a claim that CNL's marketing is unsubstantiated, not that it is false." MTD at 6. That is wrong.

Defendant mischaracterizes Plaintiff's affirmative misrepresentation claims as "lack of substantiation" claims. That is incorrect. Instead, Plaintiff alleges the "bug repellent" and "repels mosquitoes" claims are false and misleading because "the product is a complete sham" and "[s]cientific evidence shows that the Product does not repel mosquitoes. The product is ineffective and worthless." Compl. ¶ 3.

Plaintiff also points to the specific statements that form the basis of her claims. Compl. ¶ 2. She states why those statements are false and deceptive, *i.e.* because "[s]cientific evidence shows that the Product does not repel mosquitoes." *Id.* ¶ 3. And Plaintiff cites two scientific studies to support her claims. Contrary to Defendant's argument, the Complaint contains numerous "specific factual allegations of scientific evidence directly contradicting the representations at issue," MTD at 7, including, *inter alia*:

- "Independent arm-in-cage laboratory testing commissioned by Plaintiff's counsel in early 2018 revealed that the Product was ineffective in repelling Aedes mosquitoes and Culex mosquitoes – the two most worrisome and common species of mosquitoes found in the United States. Defendant's Product failed the laboratory testing almost immediately—all of the test subjects were bitten by both species of mosquitoes. Photographs of some of the Product's test subjects being bitten by mosquitoes shortly after application of the Product are shown" in the Complaint. Compl. ¶ 4.

- "California Baby Natural Bug Blend Bug Repellent also flunked 2016 testing by Consumer Reports 'to see how effectively it protects against Aedes mosquitoes (that tend to bite during the day and can spread Zika) and Culex mosquitoes (nighttime biters that can spread West Nile).' During the Consumer Reports testing, the subjects

were bitten by both species of mosquitoes within half an hour after application of California Baby Natural Bug Blend Bug Repellent. This led Consumer Reports to conclude that California Baby Natural Bug Blend Bug Repellent exhibited '[p]oor performance at repelling mosquitoes.'" *Id*. ¶ 5.

Where, as here, Plaintiff has plausibly alleged that Defendant's marketing claims are false and misleading, this "lack of substantiation" argument fails. *See Jovel v. i-Health, Inc.*, 2013 WL 5437065, at *8 (E.D.N.Y. Sept. 27, 2013) ("Courts look to a plaintiff's complaint as a whole in determining whether a plaintiff has merely alleged a lack of substantiation claim. A claim can survive such a challenge by, for example, alleging that studies show defendant's statement to be false."); *Tomasino v. Estee Lauder Companies Inc.*, 44 F. Supp. 3d 251, 259 (E.D.N.Y. 2014) ("The plaintiff has not merely alleged a non-actionable 'lack of substantiation' claim premised on the allegation that Estee Lauder's advertising is deceptive because its statements are not substantiated by science. Rather, she claims that Estee Lauder's 'efficacy claims' are affirmatively untrue."); *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013) ("plaintiffs allege the 'helps rebuild cartilage' statement is affirmatively false because, as a matter of scientific fact, it is impossible to rebuild cartilage. Further, plaintiffs cite to clinical studies that allegedly support their allegation that the Glucosamine Supplements cannot 'help rebuild cartilage' under any circumstances. Therefore, the Court does not construe plaintiffs' claims as based on a nonactionable, "lack of substantiation" theory."); *Sitt v. Nature's Bounty, Inc.*, 2016 WL 5372794, at *9, n.11 (E.D.N.Y. Sept. 26, 2016) ("Defendants argue that Plaintiff cannot merely allege that these representations are unsubstantiated by scientific support because claims for 'lack of substantiation' are not viable in New York. Plaintiff has neither alleged nor argued that Defendants' claims about black cohosh's health effects are 'not substantiated' by science, but rather that these claims are 'affirmatively untrue.' Because the Court finds that Plaintiff is not asserting a lack of substantiation claim, the Court does not determine whether

such a claim is barred under New York law.'"); *In re Clorox Consumer Litig.*, 2012 WL
3642263, at *5 (N.D. Cal. Aug. 24, 2012) (denying defendant's motion to dismiss where
plaintiffs alleged that two scientific studies directly contradicted defendant's advertising, holding
"[a] claim can survive such a challenge by, for example, alleging that studies show defendant's
statement to be false"). [5]

Defendant also argues that "Plaintiff here fails to allege any scientific proof
demonstrating CNL's marketing that the product offers protection from mosquitoes if applied
'generously and often' is false." MTD at 6. Not true. Plaintiff cites two scientific studies which
demonstrate that the Product is ineffective. *See supra*, § III. Even so, Defendant's contention
amounts to a dispute regarding the weight of the studies Plaintiff cites in her Complaint.
Whether the scientific evidence Plaintiff cites in the Complaint supports the precise propositions
for which it is cited is a question of fact the Court cannot resolve on a motion to dismiss. *Sitt v.*

---

[5] In addition to mischaracterizing Plaintiff's claims, Defendant also mischaracterizes the law of
this Circuit. Defendant argues the "Second Circuit has long held that *to plead and to prove* false
advertising claims" Plaintiff must provide scientific proof that the challenged advertisement was
false. MTD at 6 (emphasis added). But the two cases Defendant cites do not stand for that
proposition. In *Procter & Gamble Co. v. Chesebrough-Pond's Inc.* and *McNeil-P.P.C., Inc. v.
Bristol-Myers Squibb Co.*, the Second Circuit addressed the falsity issue on motions for
preliminary injunctions, not at the motion to dismiss stage. 747 F.2d 114 (2d Cir. 1984); 938
F.2d 1544 (2d Cir. 1991). Neither opinion discusses pleading requirements and any arguments
regarding what plaintiff must prove are premature at this juncture. Moreover, both cases
involved allegedly false *superiority* claims under the Lanham Act and the Second Circuit did not
discuss the applicability of its holdings to New York consumer protection statutes. *Procter &
Gamble Co.*, 747 F.2d 114, 116 (2d Cir. 1984) ("Each company sought relief under § 43(a) of the
Lanham Act and under New York General Business Law §§ 349 and 350. The New York law
claims are not presently before this court."); *McNeil-P.P.C., Inc. v. Bristol-Myers Squibb Co.*,
755 F. Supp. 1206, 1210 (S.D.N.Y. 1990), *aff'd sub nom. McNeil-P.C.C., Inc. v. Bristol-Myers
Squibb Co.*, 938 F.2d 1544 (2d Cir. 1991) ("Neither party has addressed whether their rights
under sections 349 and 350 of New York's General Business Law vary from the Lanham Act
and, therefore, no separate consideration will be given to the state claims."). Accordingly, these
cases are wholly inapplicable.

*Nature's Bounty, Inc.*, 2016 WL 5372794, at *10 (E.D.N.Y. Sept. 26, 2016); *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013); *Jovel*, 2013 WL 5437065, at *9.

## V.   DEFENDANT'S PREEMPTION ARGUMENT IS WRONG

Defendant asks this Court to invoke the doctrine of preemption despite the fact that its Product is exempt from registration with the EPA. *See* MTD at 8. In fact, Defendant fails to cite a single case in which a court has held an express warranty claim under state law was preempted as to a minimum risk pesticide product. For the reasons set forth below, Defendant's argument is wholly without merit.

### A.    The EPA Did Not Require Defendant to Make False and Misleading Statements

Attachment A to the Declaration of William A. Hurst (ECF No. 8-2) shows a copy of the Product's labeling. An examination of this image reveals that the Product's labeling does not contain a single reference to the EPA, nor does it contain an EPA Registration Number. That is because the Product is a minimum risk pesticide which is exempt from EPA registration. *See* 40 C.F.R. § 152.25(f)(1). Accordingly, the EPA did not approve any of the Product's labeling claims—Defendant made these claims voluntarily. Defendant cites no authority, nor could it, in which voluntary label statements about product efficacy were held preempted under FIFRA. Being exempt from EPA registration does not grant Defendant a license to lie. Against this backdrop, all of Defendant's arguments in favor of preemption are meritless.

### B.    The EPA Did Not Determine That The Product's Active Ingredients Are "Bug Repellents That Repel Mosquitoes"

Defendant argues that "Plaintiff's challenge to the claims 'bug repellent' and 'repels mosquitoes' is a direct challenge to the EPA's determination the active ingredients, expressly identified by the EPA as insecticide active ingredients, are bug repellents that repel mosquitoes." MTD at 10. But that makes no sense. 40 C.F.R. § 152.25(f)(1) simply states that the active

ingredients in Defendant's product are "minimum risk" and therefore it is an "exempted product." Plaintiff does not challenge that determination—Plaintiff challenges the efficacy of Defendant's product. For instance, one of the active ingredients in Defendant's Product is 0.5% cedarwood oil. EPA's determination that cedarwood oil is exempt from registration as a minimum risk pesticide does not mean that the EPA has determined 0.5% cedarwood oil is effective to protect against mosquitoes. All the EPA has determined is that cedarwood oil "may be used in non-food use products." *See* 40 C.F.R. 152.25(f)(1). Here too, Defendant offers no authority – because it cannot – showing the EPA has determined that the Product's active ingredients are "bug repellents that repel mosquitoes."

### C.   Plaintiff's Claims Do Not Impose Labeling Requirements

Even if the EPA had approved California Baby's label (which it did not), Plaintiff's claims would still not be preempted. "For a particular state rule to be pre-empted, it must satisfy two conditions. First, it must be a requirement 'for labeling or packaging'; rules governing the design of a product, for example, are not pre-empted. Second, it must impose a labeling or packaging requirement that is 'in addition to or different from those required under this subchapter.'" *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 444 (2005). Here, neither condition is satisfied.

Defendant argues that "Plaintiff's claims here plainly seek to alter a label in a manner inconsistent with the EPA's regulations implementing FIFRA." MTD at 9. That is wrong.[6] Indeed, Defendant's exact argument was rejected by the United States Supreme Court in *Bates*, which held:

---

[6] Tellingly, in support of its argument that "Plaintiff's claims here plainly seek to alter a label in a manner inconsistent with the EPA's regulations implementing FIFRA," Defendant does not even mention *Bates*, the controlling decision on this issue.

10

> Rules that require manufacturers to design reasonably safe
> products, to use due care in conducting appropriate testing of their
> products, to market products free of manufacturing defects, and to
> honor their express warranties or other contractual commitments
> plainly do not qualify as requirements for "labeling or packaging."
> None of these common-law rules requires that manufacturers label
> or package their products in any particular way.  Thus, petitioners'
> claims for … breach of express warranty are not pre-empted.

*Bates*, 544 U.S. at 444.  The reasoning is simple:

> [A] cause of action on an express warranty asks only that a
> manufacturer make good on the contractual commitment that it
> voluntarily undertook by placing that warranty on its product.
> Because this common-law rule does not require the manufacturer
> to make an express warranty, or in the event that the manufacturer
> elects to do so, to say anything in particular in that warranty, the
> rule does not impose a requirement "for labeling or packaging."

*Id.* at 444-45.

Here too, Plaintiff's claims do not impose any new requirements "for labeling or packaging."  *See Ansagay v. Dow Agrosciences LLC*, 153 F. Supp. 3d 1270, 1287 (D. Haw. 2015) ("FIFRA does not preempt claims for breach of an express warranty, as express warranty claims are not based on a requirement that a manufacturer label its product in any particular way. . . . Mrs. Ansagay's express warranty claims are not preempted as based on 'labeling requirements' because those claims derive solely from Dow, the warrantor, and are not imposed by state law."); *Esposito v. Contec, Inc.*, 47 N.Y.S.3d 180 (4th Dep't 2017) ("Plaintiff's causes of action and claims alleging defendant's breach of warranty … are not preempted by FIFRA."); *Mortellite v. Novartis Crop Prot., Inc.*, 460 F.3d 483, 490 (3d Cir. 2006) ("we conclude that FIFRA does not preempt claims based on theories … [of] breach of express warranty.  As the Supreme Court explained, such common law claims plainly do not impose labeling requirements, and therefore cannot conflict with FIFRA."); *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 525 (1992) ("A manufacturer's liability for breach of an express warranty derives from, and is

11

measured by, the terms of that warranty.  Accordingly, the 'requirement[s]' imposed by an express warranty claim are not 'imposed under State law,' but rather imposed *by the warrantor.*") (emphasis in original); *Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 719 (D.N.J. 2011) ("FIFRA does not preempt claims based on breach of express warranty").

    Most importantly, Defendant's argument defies a plain reading of *Bates*, which explained that "[a] requirement is a rule of law that must be obeyed; an event, such as a jury verdict, that merely motivates an optional decision is not a requirement.  *Bates*, 544 U.S. at 445. *See also In re: Methyl Teriary Butyl Ether*, 457 F. Supp. 2d 324, 334 (S.D.N.Y. 2006) ("The possibility that a jury verdict could induce a pesticide manufacturer to change its label [does] not amount to a state requirement.").

### D.    FIFRA Prohibits False or Misleading Information

    Defendant fails the second step of the *Bates* test too, because its argument is at odds with the plain language of FIFRA.  Specifically, Defendant's argument ignores that even products *not exempt* from EPA registration are prohibited from using false or misleading labeling claims.  *See* 7 U.S.C. § 136a(f)(2) ("[i]n no event shall registration of an article be construed as a defense for the commission of any offense under this subchapter."); *see also* 40 C.F.R. § 156.10(a)(5)(ii). Therefore, Defendant's product can contain active ingredients approved by the EPA as minimum risk pesticides yet still violate FIFRA, by, among other things, misbranding its product.[7]  *See Bates*, 544 U.S. at 438 ("Because it is unlawful under the statute to sell a pesticide that is registered but nevertheless misbranded, manufacturers have a continuing obligation to adhere to FIFRA's labeling requirements."); *see also* 7 U.S.C. § 136a(f)(2) ("registration of a pesticide

---

[7] FIFRA prohibits the sale or distribution of any pesticide that is misbranded.  *See* 7 U.S.C. § 136(j)(a)(1)(E).  A product is misbranded if "its labeling bears any statement, design, or graphic representation . . . which is false or misleading in any particular."  *See* 7 U.S.C. § 136(q)(1)(A).

shall be prima facie evidence that the pesticide, its labeling and packaging comply with the registration provisions of this subchapter" but "[i]n no event shall registration of an article be construed as a defense for the commission of any offense under this subchapter.").

It is well-established that when a manufacturer misbrands its product, it has violated FIFRA requirements and even EPA registration (which Defendant's Product lacks) would not be a valid defense.  *See Gucciardi v. Bonide Prod., Inc.*, 28 F. Supp. 3d 383, 392 (E.D. Pa. 2014) ("Defendants go on to contend that, by virtue of EPA approval, the federal administrative agency makes a determination that the composition of the Product supports the efficacy claims . . . that the Product is not misbranded.  This argument, however, completely misunderstands the scope of the preemption provision.  FIFRA only provides that states 'shall not impose or continue in effect any requirements for *labeling or packaging* in addition to or different from those required under this Act.'  7 U.S.C. § 136v(b).  FIFRA contains no provision preempting all state law claims relating to the efficacy or dangers of the Product."); *see also Bates*, 544 U.S. at 442 ("Nothing in the text of FIFRA would prevent a state from making the violation of a federal labeling or packaging requirement a state offense, thereby imposing its own sanctions on pesticide manufacturers who violate federal law.  The imposition of state sanctions for violating state rules that merely duplicate federal requirement is equally consistent with the text of § 136v.") (emphasis added).

Defendant's proffered authority is inapposite.  For instance, *Smith v. Hartz Mountain Corp.*, 2012 WL 5451726 (N.D. Ohio Nov. 7, 2012) and *Wilgus v. Hartz Mountain Corp.*, 2013 WL 653707 (N.D. Ind. Feb. 19, 2013) concern challenges to EPA-required safety warnings on product labels.  *See Smith*, 2012 WL 5451726, at *3 ("In this case, however, Plaintiffs claim the FIFRA-prescribed warning is insufficient and seek to require Hartz to use a different warning.");

*Wilgus*, 2013 WL 653707, at *7 ("Allegations that Hartz failed to place adequate warnings on its products, no matter how those claims are couched, run afoul of FIFRA and cannot move forward.").  But neither *Smith* nor *Wilgus* are applicable because here, Plaintiff does not challenge anything that the EPA or FIFRA <u>required</u> Defendant to put on its labeling.

Defendant's reliance on *Bioganic Safety Brands, Inc. v. Ament*, 174 F. Supp. 2d 1168 (D. Colo. 2001) is similarly misplaced as it also concerned a challenge to a defendant's use of "safe for kids" on a product's labeling.  *See id.* at 1172.  However, in finding that preemption applied, the Court relied specifically on "40 C.F.R. § 152.25(g)(3)(iii) [which] omits safety claims from the enumerated categories of prohibited labeling statements on exempt pesticide products." *Id.* at 1176.  Accordingly, the Court held that "FIFRA regulations permit true safety claims on exempt pesticide products." *Id.*  But here, to the contrary, Plaintiff does not contend that any of Defendant's ingredients are unsafe, nor does Plaintiff challenge Defendant's safety-related label claims.  Instead, Plaintiff challenges Defendant's voluntary label statements concerning the Product's efficacy.

Finally, *DJ Coleman, Inc. v. Nufarm Americas, Inc.*, 693 F. Supp. 2d 1055 (D.N.D. 2010) is inapplicable.  There, the court found that the language of North Dakota's consumer protection statute "clearly imposes a broader obligation than FIFRA's requirement that labels not contain 'false or misleading' statements." *Id.* at 1081.  But here, Defendant does not argue, nor could it, that GBL imposes a broader obligation than FIFRA's labeling requirements.  Indeed, other courts in this Circuit have already considered and rejected that argument.  *See, e.g.*, *Carias v. Monsanto Co.*, 2016 WL 6803780, at *7 (E.D.N.Y. Sept. 30, 2016) (holding that "the general standards that govern … claims under the GBL are equivalent to FIFRA's misbranding standards.").

14

## VI.     PLAINTIFF'S ALLEGATIONS SATISFY RULE 9(B)

Defendant argues that Plaintiff's fraud claim must be dismissed for lack of specificity because "Plaintiff fails to allege facts showing the label representations on which she relied are false."  MTD at 15.  That is incorrect.  Fed. R. Civ. P. 9(b) requires that the complaint "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).  On a motion to dismiss, a court must read the complaint generously, and draw all inferences in favor of the pleader.  *Id.*  (citing *Yoder v. Orthomolecular Nutrition Inst., Inc.*, 751 F.2d 555, 562 (2d Cir. 1985)).

Plaintiff's allegations satisfy the heightened pleading standard because they are sufficiently precise to allow Defendant to understand the nature of the allegations and frame a responsive pleading.  These allegations identify Defendant's fraudulent misrepresentations, where and when the misrepresentations were made, and they explain why the misrepresentations are false.

In other words, Plaintiff's Complaint provides "all of the essential factual background that would accompany the first paragraph of any newspaper story – that is, the 'who, what, when, where and how' of the events at issue."  *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276-77 (3d Cir. 2006) (citations omitted); *see also U.S. ex rel. Polansky v. Pfizer, Inc.*, 2009 WL 1456582, at *4 (E.D.N.Y. May 22, 2009) ("Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud.").

**Who:**     The Complaint specifically identifies Defendant as the entity that falsely and misleadingly labeled the Product.  Compl. ¶¶ 2-3, 9-10.

**What:**        The Complaint identifies and describes the product.  *Id.* ¶¶ 2, 3.  Plaintiff alleges that Defendant falsely represents that the Product is a "bug repellent" that "repels mosquitoes."

**Where:**       The Complaint alleges that Defendant made the false statements directly on the Product's label and packaging.  *Id.* ¶ 2.  Moreover, Plaintiff alleges that she purchased the Product at a Target store located in Schenectady, New York.  *Id.* ¶ 8.

**When:**        Plaintiff alleges that she purchased the Product in or about the end of December 2015 or early January 2016.  *Id.*  Plaintiff also alleges that she read and relied on Defendant's misrepresentations prior to purchase.  *Id.*

**How:**         The Complaint explains how Defendant's statements were false and misleading. "Unfortunately for consumers however, the Product is a complete sham. Scientific evidence shows that the Product does not repel mosquitos.  The product is ineffective and worthless." *Id.* ¶ 3.  Independent arm-in-cage laboratory testing commissioned by Plaintiff's counsel in early 2018 revealed that the Product was ineffective in repelling Aedes mosquitoes and Culex mosquitoes – the two most worrisome and common species of mosquitos found in the United States. Defendant's Product failed the laboratory testing almost immediately—all of the test subjects were bitten by both species of mosquitos.  *Id.* ¶ 4.  Photographs of some of the Product's test subjects being bitten by mosquitos shortly after application of the Product are shown below: (displaying photos).  *Id.*  California Baby Natural Bug Blend Bug Repellent also flunked 2016 testing by Consumer Reports "to see how effectively it protects against Aedes mosquitos (that tend to bite during the day and can spread Zika) and Culex mosquitos (nighttime biters that can spread West Nile)."  During the Consumer Reports testing, the subjects were bitten within half an hour after application of California Baby Natural Bug Blend Bug Repellent.  This led Consumer Reports to conclude that California Baby Natural Bug Blend Bug Repellent exhibited "[p]oor performance at repelling mosquitos."  *Id.* ¶ 5.

Nothing more is required.  *See Ebin*, 2013 WL 6504547, at *5 (S.D.N.Y. Dec. 11, 2013) ("the

Court finds that the Complaint fully specifies who made the false statement (here, Kangadis),

what the false statement was (the labeling describing the product as "100% Pure Olive Oil"),

when the statement was made (in late 2012 or early 2013), where the statement was made (on the

Capatriti containers plaintiffs purchased from the local grocery store), and how that statement

was false (the product was Pomace rather than pure olive oil).".

**VII.     PLAINTIFF STATES A CLAIM FOR UNJUST ENRICHMENT**

Defendant argues that Plaintiff's unjust enrichment claim is duplicative and should be dismissed because it "is predicated on exactly the same alleged conduct underlying her other claims."  MTD at 17-18.  However, unjust enrichment claims under New York law are quite versatile – they may be pled in the alternative, and they are not mutually exclusive with other types of claims.  *See, e.g.*, Fed. R. Civ. P. 8(a)(3) ("[A] demand for the relief sought, which may include relief in the alternative or different types of relief").  Since Defendant's Motion to Dismiss targets Plaintiff's contract-based breach of warranty claims, it follows that the existence of an applicable contract or warranty is disputed.  As such, Plaintiff's unjust enrichment claim is properly plead in the alternative and should not be dismissed.  *See Keehfus Ltd. Partnership v. Fromkin Energy, LLC*, 2007 WL 2454217, at *7 (N.D.N.Y Aug. 23, 2007) (Sharpe, J.) ("at this early juncture and drawing all inferences in plaintiff's favor, the complaint states viable claims for unjust enrichment"); *Speedfit LLC v. Woodway USA, Inc.*, 53 F. Supp. 3d 561, 580 (E.D.N.Y. 2014) ("While plaintiffs' unjust enrichment claim is derived from the same set of facts as plaintiffs' breach of contract claim, plaintiffs may plead alternative theories of liability at this stage because Woodway disputes the existence of an agreement."); *Trend & Style Asia HK Co. v. Pac. Worldwide, Inc.*, 2015 WL 4190746, at *6 (S.D.N.Y. July 10, 2015) ("However, at this stage of the litigation, the existence of express oral contracts, implied contracts, or both is still in dispute.  Therefore, T & S can plead breach of contract, unjust enrichment, account stated, and promissory estoppel in the alternative.").

Here, Plaintiff alleges that "Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff and Class members' purchases of California Baby Natural Bug Blend Bug Repellent.  Retention of those monies under these circumstances is unjust and

17

inequitable because Defendant's sale of California Baby Natural Bug Blend Bug Repellent resulted in purchasers being denied the full benefit of their purchase because California Baby Natural Bug Blend Bug Repellent is ineffective to repel mosquitos." Compl. ¶ 52. That is sufficient. *See Quinn v. Walgreen Co.*, 958 F. Supp. 2d at 545 (S.D.N.Y. 2013) ("Plaintiffs have alleged Walgreens benefited from plaintiffs' purchases of Glucosamine Supplements, and permitting Walgreens to retain that benefit in the event the Glucosamine Supplements do not work as advertised would be unjust. Consequently, plaintiffs have stated claims for unjust enrichment under … New York … law.").

## VIII.   THIS COURT HAS SPECIFIC PERSONAL JURISDICTION OVER THE CLAIMS OF ABSENT CLASS MEMBERS

Relying primarily on *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773 (2017) ("*BMS*"), Defendant argues that "[t]he Complaint fails to allege facts to establish general jurisdiction over CNL, or specific personal jurisdiction as to the claims of putative nationwide class members residing outside of New York. *See* MTD at 20-22. That argument fails because: (a) specific personal jurisdiction is not based on the claims of absent class members; and (b) the *BMS* decision did not change that rule.

### A.   The Claims Of Absent Class Members Are Irrelevant To Specific Personal Jurisdiction

Defendant's argument that the Court lacks specific personal jurisdiction over claims of absent, out-of-state class members fails for three reasons:

First, it is well-established that "[w]hen [an] action is brought as a purported class action, personal jurisdiction over each defendant is assessed with respect to the named plaintiffs' causes of action." *Famular v. Whirlpool Corp*, 2017 WL 2470844, at *2 (S.D.N.Y. June 7, 2017). "[I]t is the named plaintiff's claim that must arise out of or result from the defendant's forum-related activities, not the claims of the unnamed members of the proposed class, who are not party to the

18

litigation absent class certification." *Aliano v. Quaker Oats Co.*, 2017 WL 56638, at *4 (N.D. Ill. Jan. 4, 2017) (internal quotation omitted).   "[C]laims of unnamed class members are irrelevant to the question of specific jurisdiction." *AM Tr. v. UBS AG*, 78 F. Supp. 3d 977, 986 (N.D. Cal. 2015), *aff'd*, 681 F. App'x 587 (9th Cir. 2017).   Here, Defendant does not dispute that this Court has specific personal jurisdiction over it with respect to Plaintiff's claims.  That should end the inquiry.

Post-*BMS* decisions confirm that personal jurisdiction in a putative class action is determined by the named plaintiff's claims.  *See Jackson v. Bank of Am., N.A.*, 2018 WL 2381888, at *6 (W.D.N.Y. May 25, 2018) (out of state plaintiffs "cannot be lead plaintiffs for a potential class action in New York, though the lack of specific jurisdiction potentially would not be an impediment to unnamed members of a class."); *Fitzhenry-Russell v. Dr. Pepper Snapple Group, Inc.*, 2017 WL 4224723, at *5 (N.D. Cal. Sept. 22, 2017) ("[N]onnamed class members . . . may be parties for some purposes and not for others.  The label 'party' does not indicate an absolute characteristic, but rather a conclusion about the applicability of various procedural rules that may differ based on context.") (quoting *Devlin v. Scardelletti*, 536 U.S. 1, 9-10 (2002) (emphasis in original)); *In re Chinese-Manufactured Drywall Prods. Liability Litig.*, 2017 WL 5971622, at *19 (E.D. La. Nov. 30, 2017) ("Accordingly, it is clear and beyond dispute that Congress has constitutional authority to shape federal court's jurisdiction beyond state lines to encompass nonresident parties.  And Congress has done so repeatedly – with Rule 4, MDLs, and class actions."); *Feller v. Transamerica Life Ins. Co.*, 2017 WL 6498603, at *17 (C.D. Cal. Dec. 11, 2017) ("[T]he Court is not persuaded to extend *BMS* to the class action context on these facts.  …  The Court thus has personal jurisdiction over Transamerica as to *all* putative class members in the National Class.").

19

Second, the fact that absent class members are not "haling" the defendant into any forum makes all the difference for purposes of analyzing personal jurisdiction. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) ("This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random' or 'fortuitous' or 'attenuated' contacts."). Although absent class members may ultimately recover from a defendant, they never assert claims against a defendant in a sense that matters for personal jurisdiction. It is the named plaintiffs who force the defendant to answer the suit, respond to discovery, and defend against class certification. Likewise, the defendant need only propound discovery and file dispositive motions against the named plaintiffs. In contrast, "an absent class-action plaintiff is not required to do anything." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810 (1985). Therefore, the rule that a court can exercise personal jurisdiction over a class so long as it can exercise personal jurisdiction over the claims of the named plaintiffs makes sense.

Third, Defendant simply ignores the fact that courts throughout the country – including in this Circuit – have long certified multi-state classes in a variety of circumstances where the defendant was not incorporated or headquartered in the forum state.[8] Defendant does not argue that any of those cases are wrongly decided. If that is the case, then Defendant's position cannot be correct. *See In re Chinese Drywall*, 2017 WL 5971622, at *18 ("If due process acted as a constraint on nationwide class actions, then settlement classes would also be uncertifiable and the Class Action Fairness Act would have a meaningless exercise.").

---

[8] *Goldemberg v. Johnson & Johnson Consumer Cos.*, 317 F.R.D. 374 (S.D.N.Y. 2016) (certifying New York, California, and Florida consumer classes against a New Jersey-based corporate defendant); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397 (S.D.N.Y. 2015) (certifying New York and California consumer classes against an Ohio-based corporate defendant).

**B.** *BMS* **Does Not Support Dismissal Of The Non-New York Absent Class Members' Claims**

*BMS* does not support dismissal of the non-New York absent class members' claims because it did not address a class action and did not change the law on class actions.[9]  *See Campbell v. Freshbev LLC*, 322 F. Supp. 3d 330, 337 (E.D.N.Y. 2018) (explaining and distinguishing *BMS*); *Gonzalez v. Costco Wholesale Corp.*, 2018 WL 4783962, at *8 (E.D.N.Y. Sept. 29, 2018) (same); *Fitzhenry-Russell*, 2017 WL 4224723, at *5 (same); *In re Chinese Drywall*, 2017 WL 5971622, at *12-13 (same); *Feller*, 2017 WL 6496803, at *17 (same). Instead, *BMS* involved a mass tort where a group of plaintiffs sued for personal injuries on their own behalf, and in that context the Supreme Court held that the California state court lacked personal jurisdiction over the claims of the <u>named</u> plaintiffs who resided outside California.  *See BMS*, 137 S. Ct. at 1777.  In her dissenting opinion in *BMS*, Justice Sotomayor specifically explained that the Court "[did] not confront the question whether its opinion here would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there."  *Id.* at n.4.

In fact, given the unsettled nature of the law following *BMS*, courts in this Circuit considering whether *BMS* extends to class actions have denied motions to dismiss similar cases and deferred resolution of the issue to the class certification stage.   *Campbell*, 322 F. Supp. 3d at 337; *Gonzalez*, 2018 WL 4783962, at *8.  And at least one court in this Circuit has declined to extend *BMS* to a putative class action.  *Jensen v. Cablevision Sys. Corp.*, 2017 WL 4325829, at *9 (E.D.N.Y. Sept. 27, 2017).

---

[9] *BMS* "concerns the due process limits on the exercise of specific jurisdiction by a State," and the Supreme Court explicitly left open whether the same logic would extend to federal courts under the Fifth Amendment.  *See BMS*, 137 S. Ct. at 1783-84.

Defendant fails to even address the distinction between class actions and mass tort actions, instead arguing in conclusory fashion that "numerous district courts have ruled the *Bristol-Myers* decision is applicable in class actions" and that, without elaboration, this Court should follow suit.  MTD at 22.  However, the distinction is critical because "[i]n a mass tort action, each plaintiff [is] a real party in interest to the complaint" while "[i]n an action brought as a class action, personal jurisdiction is based on a defendant's contacts with the forum state and actions giving rise to the named plaintiffs' causes of action." *Gonzalez*, 2018 WL 4783962, at *7; *Feller*, 2017 WL 6496803, at *17; *see also Abraham v. St. Croix Renaissance Grp., L.L.L.P.*, 719 F.3d 270, 272 n.1 (3d Cir. 2013) ("[U]nlike a class action, a mass action has no representative or absent members because all plaintiffs in a mass action are named in the complaint."); *Devlin v. Scardelletti*, 536 U.S. 1, 9-10 (2002) ("Nonnamed class members … may be parties for some purposes and not for others.  The label 'party' does not indicate an absolute characteristic, but rather a conclusion about the applicability of various procedural rules that may differ based on context.").  Simply put, in the mass tort context each plaintiff is an actual party.  The same is not true of unnamed class members.  Thus, Defendant "has not presented the Court with persuasive argument – much less binding law – compelling extension of *Bristol-Myers* to class actions." *Fitzhenry-Russell*, 2017 WL 4224723, at *5.

The post-*BMS* cases cited by Defendant such as *McDonnell v. Nature's Way Prods., LLC*, 2017 WL 4864910 (N.D. Ill. Oct. 26, 2017) and *Wenokur v. AXA Equitable Life Ins. Co.*, 2017 WL 4357916 (D. Ariz. Oct. 2, 2017) – are non-binding and unpersuasive.  None of the cases considered the meaningful distinction between mass actions and class actions.  Moreover, *Spratley v. FCA US LLC*, 2017 WL 4023348 (N.D.N.Y. Sept. 12, 2017) and *In re Dental Supplies Antitrust Litig.*, 2017 WL 4217115 (E.D.N.Y. Sept. 20, 2017) are readily

22

distinguishable.  In *Spratley*, the court merely dismissed the claims of non-resident *named* plaintiffs—it did not discuss absent class members' claims.  *Spratley*, 2017 WL 4023348, at *6. And the *In re Dental Supplies Antitrust Litig.*, court merely held "Due process to assert personal jurisdiction requires that there be a direct 'connection between the forum and the specific claims,' *Bristol-Myers*, 137 S. Ct. at 1780, and here, plaintiffs' submissions fail to make that connection" because Defendant did not make any sales to the named plaintiff in New York and any sales it did make in New York lacked any nexus to the purported class claims.  *In re Dental Supplies Antitrust Litig.*, 2017 WL 4217115, at *9.  Plaintiff respectfully submits the cases it has presented are far more persuasive.

In sum, Defendant asks this Court to extend *BMS* to class actions without citation to any persuasive – let alone binding – authority to support its position.  "Under Defendant's premise, *BMS* would require plaintiffs to file fifty separate class actions in fifty or more separate district courts across the United States – in clear violation of congressional efforts at efficiency in the federal courts."  *In re Chinese Drywall*, 2017 WL 5971622, at *19.  The Court should decline Defendant's invitation to usurp federal class actions.

## IX.   DEFENDANT DOES NOT ARGUE FOR THE DISMISSAL OF PLANTIFF'S CLAIMS UNDER NEW YORK GENERAL BUSINESS LAW ("GBL") §§ 349 & 350

Defendant's motion to dismiss does not address Plaintiff's claims for violation of GBL §§ 349 and 350.  Accordingly, all arguments for dismissal of these claims on reply shall be deemed waived.  At minimum, these claims should proceed.

## X.   LEAVE TO AMEND SHOULD BE FREELY GIVEN

To the extent that the Court finds any deficiencies in Plaintiff's pleadings, Plaintiff respectfully requests leave to amend.  *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").

23

## XI.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's motion to dismiss in its entirety.


Dated:  February 25, 2019

Respectfully submitted,

By:        */s/ Philip L. Fraietta*
          Philip L. Fraietta

**BURSOR & FISHER, P.A.**
Philip L. Fraietta
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
Email: pfraietta@bursor.com

*Attorneys for Plaintiff*

## PROOF OF SERVICE

I, Philip L. Fraietta, an attorney, certify under the penalties of perjury as provided by law, that on February 25, 2019, the foregoing **Plaintiff's Opposition to Defendant's Motion To Dismiss** was filed via the Court's CM/ECF system, which automatically will send notification of such filing to all counsel of record.

_/s/ Philip L. Fraietta_
Philip L. Fraietta
